## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JUAN SEGOVIA and VICTOR FLORES, Each Individually and on behalf of All Others Similarly Situated, | § § § | |
| | § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No. 5:17-CV-1246-FB (HJB) |
| | § | |
| FUELCO ENERGY LLC, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT FUELCO'S MOTION FOR
## DERCERTIFICATION OF COLLECTIVE ACTION

Defendant, Fuelco Energy LLC ("Fuelco" or "Defendant"), files this Motion to decertify the Plaintiffs' collective action conditionally certified by the Court [Doc. 54].

## I.
## INTRODUCTION

Fuelco files this motion to decertify Plaintiffs' collective action because Plaintiffs are not similarly situated. Their factual contentions and evidence relevant to the most critical issues vary significantly among them. The Plaintiffs' evidence is not representative, and it would be unfair to Fuelco if the jury is allowed to make inferences regarding the other Plaintiffs based on any representative evidence of some of the Plaintiffs.

This is an FLSA overtime case about whether commute time (or on-call time to a much lesser degree) is compensable. As discussed below, decertifying this class is warranted in so that Fuelco will not be unfairly prejudiced and required Fuelco to defend numerous unique and contradictory allegations in a single lawsuit. Unlike most FLSA overtime class actions, this case <u>does not</u> involve the application of a "common policy, plan, pattern, or practice". Instead, determining whether each

plaintiff is entitled to compensation for commute time or on-call time depends upon a fact-specific inquiry.  For commute time, that inquiry is of the activities, if any, that each plaintiff did before or after their commute and whether those activities are "an integral and indispensable part" of the employee's "principal activities," (i.e., both necessary to the principal work performed and done for the benefit of the employer).

Now that discovery has concluded, nearly twenty of the class members were deposed, and all have provided interrogatory responses, it is clear that the facts and circumstances surrounding each Plaintiff's claimed pre-commute activities varies dramatically in ways that are directly relevant to the most critical issues to be decided in this case.

For example, with respect to a pre-trip inspection (critical to whether the commute time is compensable time), plaintiff Exposito testified as follows:

> Q:   Would you need to do anything to the vehicle before leaving for the jobsite?
>
> A:   No, we didn't have to do anything to it.
>
> Q:   No inspection of the van?
>
> A:   No.

(Exposito Depo. App. at 309, 31:9–20).  Plaintiff Aaron Hill, on the other hand, claimed he performed daily pre-trip inspections, and he described a daily routine that, if true, would make a NASCAR mechanic blush with envy:

> All right.  I'm in the front of the vehicle, I'm looking at the front of the vehicle, from the front of the vehicle, and I'm on the driver's side of the car or truck or van.  I'm checking the tires, I'm rubbing my hands on the tire, you know, making sure there's nothing wrong with the tires.  I'm moving the tires like so – and this is all four tires. I'm just going to show you this one, and then the other three, same thing.  I'm doing that, making sure there's nothing wrong with those tires.  I'm checking the brakes inside – in addition, you're going to check the brakes, as well.  Checking the horn.  I go to the front door.  I blow on the horn, make sure the horn works, I turn on the lights – prior to going to the back, I turn on the lights, left blinker's on.  I have that – I'm looking at that, making sure the high beam lights are working, the low beam lights are working.  I leave it on, and I still have that blinker going.  I go to the next tire, which is the driver's side rear tire, and I do the same thing that I did with the driver

> front, but I'm also looking at the backlights, making sure they're working, making sure that blinker light's on.  I have on the left blinker, making sure the brake lights are working, as well, and I follow sequence around in the driver's side, as well, and then what I do is I put on the right blinker and do the same thing.  Then I put on the hazard lights, make sure they're working.  And if my helper's in the car with me, the van or truck, I have to stand out there while I push on the brakes and he tells me "yea" or "nay."  Then I put the reverse on there, as well, and he tells me "yea" or "nay."  Again, check underneath the hood, make sure the belts are working, the fluids are up to the level, things of that nature.  Of course, I make sure that that horn works, as well.

Hill Depo. App. at 329, 138:20-140:12; *see also id.* at 138:14-17 (When asked if the routine was the same every day, he responded:  "Same routine, yes, sir.").  This comparison—which is just one example of the drastically contrasting testimony of the class members—is referred to herein as the "**Exposito/Hill Comparison**".  Similar disparities in Plaintiffs' testimony on key fact issues repeat themselves throughout the record, and are developed further below.

The Exposito/Hill Comparison demonstrates, on a number of levels, why class certification is inappropriate.  The most glaring is that it could lead to an improper result where plaintiffs like Exposito, who admittedly did not perform pre-trip activities, are awarded compensation from Fuelco for work that was clearly not compensable if their own unique facts were applied to the law in their own case and outside of a class setting.  Second, Fuelco is unable to present different defenses against the facts and circumstances of each Plaintiff that Fuelco would otherwise have available if the case were not a class action (i.e. moving for summary judgment based upon testimony that no pre-trip activities occurred and the commute time is not compensable as a matter of law).  Giving this case class treatment would unfairly prejudice Fuelco and not properly allow Fuelco to defend against all of different sets of facts that we now know exist after completion of discovery.

 As the docket reflects, Fuelco requested, and was granted, a modification to the schedule so that summary judgment motions could be briefed after a ruling on class certification.  Fuelco requested the schedule modification because, when it began drafting its summary judgment motion, it was unable to draft one motion that would fit for all of the plaintiffs – because each of them has a different set

**DEFENDANT FUELCO'S MOTION FOR
DERCERTIFICATION OF COLLECTIVE ACTION**                                                         **Page 3**

of circumstances.  For example, some did no pre-commute activities.  These cases are easy because there is no basis to conclude that the commute time was compensable.  For others, they claim to have performed inspections, but they were short inspections that the law would deem "de minimis" and would likewise be insufficient to make any commute time compensable as a matter of law.   Others testified that they did extensive inspections.  But for those Plaintiffs, their testimony is different, inconsistent, implausible, and in some cases can be directly proven to be false testimony.  Additionally, controlling precedent requires that the activities be "integral and indispensable" to the principal employment activities.  The facts key to the critical issues that make commute time compensable are unique and specific to each plaintiff.  And, those issues are just with respect to the pre-commute activities.  The same issues exist with respect to post-commute activities, as well as on-call time.  And, each plaintiff's testimony has different combinations amongst those three areas making for 58 individualized and different sets of circumstances.

Fuelco would be prejudiced if the class is not de-certified.  Without de-certification, all Plaintiffs would be grouped together and a jury forced to make a decision as to all, and not each individual plaintiff.  Simply put, this is not a case appropriate for class treatment.   Instead, the class should be de-certified, and the opt-in plaintiffs dismissed from the case.  In the event any of those plaintiffs actually believe their case has merit, and the lawyers want to pursue the case knowing the real facts, they can re-file and have their unique facts and circumstances adjudicated, or possibly resolved by the parties.  But, as the case stands now, the facts and circumstances surrounding most of the opt-in plaintiffs could not survive summary judgment standing alone, and to lump them together with testimony (that Fuelco believes was largely fabricated) would prejudice Fuelco and not be appropriate given the framework required for certifying an FLSA class.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs allege that Fuelco violated the Fair Labor Standards Act, 29 U.S.C. § 203, ("**FLSA**") by not paying overtime for hours exceeding forty hours per week for (a) time spent driving (commuting) to and from their place of lodging and the frac site ("**commute time**") and (b) time spent on "standby" ("**standby time**"). (*See Second Am. Complaint*, Doc. 55 at ¶¶ 26, VI, VIII; *see also Pls' Renewed Motion for Conditional Cert.*, Doc. 44 at pp. 8–9.)  Following the low standards for conditional certification, this Court conditionally certified Plaintiffs' collective action on December 10, 2018. (Doc. 54.)

Fuelco supplies fuel to oil and gas production companies at their respective well sites. Plaintiffs were "frac fuel technicians" or "frac fuel drivers," whose employment duties generally involved working at the customer's oil or natural gas hydraulic fracturing site ("**job site**" or "**frac site**"). Frac fuel drivers operated a bobtail truck at the frac site and delivered fuel throughout the frac site location. Frac fuel technicians transferred fuel at the frac site from the bobtail truck to the customer's equipment.

The frac sites were often in remote areas, so it was necessary to lodge the employees at the nearest hotel or at a "man-camp" (collectively, "**hotel**"). Plaintiffs commuted between the hotel and frac site in a passenger truck or van owned by Fuelco. Occasionally, when a customer's frac site was down indeterminately, Plaintiffs might be placed on-call.  The only restrictions while on-call were to remain sober and within a reasonable distance from the frac site or hotel.  As a fringe benefit, Fuelco paid Plaintiffs their regular rate of pay for commute time and on-call time at the hotel. Since Plaintiffs were not working during commute or on-call time, Fuelco did not include commute or on-call time in the calculation of Plaintiffs' hours for payment of overtime.  On other occasions, some Plaintiffs worked in Fuelco's yard performing various tasks, or were on standby at the jobsite, but Fuelco paid Plaintiffs overtime for any hours worked over forty per week for this time.

# III.
# ARGUMENT AND AUTHORITIES

At the second stage of an FLSA collective action, the district court reexamines the conditionally certified class to ensure that it is indeed composed of similarly situated members. *Mooney* at 1214. The court must make a factual determination of whether the employees who have opted in are similarly-situated. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008). If the district court determines, in light of the developed record, that the class members are no longer similarly situated, then it may decertify the class and dismiss the opt-in plaintiffs without prejudice. *Mooney* at 1214; *Casanova v. Gold's Tex. Holdings Grp., Inc.*, No. SA-13-CA-1161-DAE, 2016 U.S. Dist. LEXIS 196681, at *7 (W.D. Tex. 2016) (Bemporad, Mag.). The original plaintiffs, or class representatives, proceed to trial on their individual claims. *Mooney* at 1214; *Casanova*, 2016 U.S. Dist. LEXIS 196681, at *7.

## A. TO SURVIVE A MOTION TO DE-CERTIFY, PLAINTIFFS MUST SHOW THEY ARE SIMILARLY SITUATED IN THEIR FLSA COMPLAINTS AGAINST FUELCO.

An action to recover alleged unpaid overtime compensation may be brought by "one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Hickson v. United States Postal Serv.*, No. 5:09CV83, 2010 U.S. Dist. LEXIS 104112, at *8 (E.D. Tex. 2010) (citing 29 U.S.C. §216(b)). A plaintiff must show that putative class members were affected by a common policy, plan, pattern, or practice to proceed collectively under Section 216(b) of the FLSA. *Gaylon v. Chartis Glob. Investigations, Inc.*, No. H-10-0434, 2010 U.S. Dist. LEXIS 155235, at *30 (S.D. Tex. 2010). Because the parties have been able to conduct discovery, the similarly situated inquiry at the second stage is much more stringent. *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008). Whether plaintiffs are similarly situated is based on three factors: (a) the disparate factual and employment settings of the individual plaintiffs, (b) the various defenses available to defendant which appear to be individual to each plaintiff, and (c) fairness and procedural considerations. *Casanova* at

*7 (citing *Mooney* at 1213 n.7 (citation omitted)).  "The three factors are not mutually exclusive and there is considerable overlap among them."  *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 739 (W.D. Tex. 2018).

A court may deny a plaintiff's right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.  *Gaylon*, 2010 U.S. Dist. LEXIS 155235, at *31; *Proctor* 250 F.R.D. at 280.  In looking at the factual disparities among plaintiffs, the Court must consider if it can "coherently manage the class in a manner that will not prejudice any party."  *Proctor* at 281.  If there is "no single decision, policy, or plan" that affects the plaintiffs, then the case will have "enormous manageability problems. . . ." *Id.*

**B.  COMMUTE TIME—PLAINTIFFS <u>ARE NOT</u> SIMILARLY SITUATED REGARDING THEIR PRE AND POST-COMMUTE ACTIVITIES.  IN FACT, THE EVIDENCE SHOWS THEY ARE SITUATED DIFFERENTLY.**

Plaintiffs claim their commute time was compensable because of activities they performed just before their daily commutes from the hotel to the frac site, and just after their post-shift commutes from the frac site back to the hotel.  Activities performed either before or after the regular work shift are only compensable under the portal-to-portal provisions of the FLSA if the activities are "an integral and indispensable part" of the employee's "principal activities" and not specifically excluded by section 4(a)(1).  *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).  To be integral and indispensable, an activity must be necessary to the principal work performed and done for the benefit of the employer. *Von Friewalde v. Boeing Aero. Operations, Inc.*, 339 F. App'x 448, 454 (5th Cir. 2009).  Thus, each Plaintiff's case hinges on their particular and respective pre- and post-work activities, if any, but the facts and evidence in this case concerning alleged pre- and post-work activities show that each Plaintiff alleges material facts that are different, unique, individualized, inconsistent, and contradictory to the testimony of other Plaintiffs, so much so that Plaintiffs cannot genuinely claim that they are similarly situated.

Furthermore, Plaintiffs did not set forth any common policy, plan, pattern, or practice.  Rather, each plaintiff had its own set of facts and circumstances that were inconsistent with, or that directly contradicted that of the other Plaintiffs.

At the very least, there are at least seven (7) categories of critical fact issues where the plaintiffs contradict each other in the same way Exposito and Hill contradicted each other in the Exposito/Hill Comparison.  For example, forty-one (41) of the Plaintiffs claim they did some sort of pre-trip inspection activity, while seventeen (17) either testified they performed no inspections or did not list inspections as a basis for commute-time compensability in their interrogatory responses.  App. 1[1]  (the "**Pre-Trip Inspection/No Inspection Comparison**").

Seventeen (17) Plaintiffs claimed to load equipment, while forty-one (41) make no such claim. App. 2 (the "**Load/No Load Comparison**").  And, sixteen (16) Plaintiffs claimed to attend a safety meeting at the hotel before their commute, while forty-two (42) made no such claim .  App. 3 ("**Safety Meeting/No Safety Meeting Comparison**").



---

[1] Each Comparison identified has a page in the Appendix that provides a chart that identifies where the information forming the basis for the comparison can be found in the record.

**DEFENDANT FUELCO'S MOTION FOR**
**DERCERTIFICATION OF COLLECTIVE ACTION** **Page 8**

With respect to post-commute activities that might arguably form a basis to make post-shift commute time (from jobsite back to hotel) compensable, Plaintiffs' testimony is even more inconsistent.  For example, twenty-one (21) Plaintiffs did not claim to perform any post-commute activities following their work shift, while thirty-seven (37) claimed they either performed post-trip vehicle inspections, completed paperwork/made phone calls, unloaded equipment/tools from the vehicle, cleaned the vehicle, attended staff/safety meetings, and/or repaired the vehicle.  App. 4 ("**No Post-Trip Basis/Some Basis Comparison**").  With respect to performing paperwork and/or work calls after arriving back to the hotel, twenty-three (23) claim they did, and thirty-five (35) did not.  App. 5 (the "**Paperwork/No Paperwork Comparison**").  With respect to performing a post-trip vehicle inspection, four (4) claim they did, and fifty-four (54) do not.  App. 6 (the "**Post Trip Inspection/No Inspection Comparison**").  With respect to unloading/loading equipment and tools after the trip, seven (7) claim that they did, and fifty-one (51) do not.  App. 7 ("**Post-Trip Un;oad/No Unload Comparison**").



In sum, Plaintiffs' testimony demonstrates there was no common policy, plan, pattern, or practice. In fact, it demonstrates the exact opposite. More specifically, on the most critical issue in this case – whether commute time is compensable –each plaintiff alleged a unique set of facts and circumstances that would be inappropriate for class treatment. The Exposito/Hill Comparison demonstrates this. But, the same contradictions can be found across the class as laid out above with the Pre-Trip Inspection/No Inspection Comparison, Load/No Load Comparison, Safety Meeting/No Safety Meeting Comparison, No Post-Trip Activity/Some Post Trip Activity, Paperwork/No Paperwork Comparison, Post Trip Inspection/No Inspection Comparison, and the Unload/No Unload Comparison.

So whether any Plaintiff's commute time between the frac site and hotel was potentially compensable for overtime depends on (a) whether each preliminary or postliminary activity each Plaintiff claims to have performed was "integral and indispensable" to their employment; (b) whether the amount of time each Plaintiff spent performing each preliminary and postliminary activity was *de minimis*; and (c) how often each Plaintiff performed each activity.

### (1) Vehicle inspections

**a. There is no uniformity in whether the Plaintiffs were supposed to perform vehicle inspections, so they were not subject to a common policy or practice to deny them overtime compensation.**

There is no uniformity in whether Fuelco required the Plaintiffs to perform vehicle inspections. To elaborate further on the testimony surrounding the Pre-Trip Inspection/No Inspection Comparison, Plaintiff Exposito testified that he never performed pre-trip vehicle inspections, because Fuelco had no such requirement. (Exposito Depo. App. at 309, 31:6–20.) According to Plaintiff Valenzuela, some crew leaders did not require pre-trip inspections. (Valenzuela Depo, App. at 480, 97:5–8.) The Plaintiffs' testimony conflicted about whether they were told to perform vehicle inspections. For example, Plaintiff Dixon testified that his supervisor only told him

to check "'all equipment that you operate.'" (Dixon Depo, App. at 291, 62:8–23.) This statement led him to believe that he was supposed to perform a pre-trip inspection of the passenger vehicles before commuting to the frac site. (*Id.* at 61:1–63:22.) Plaintiff Hearon never recalled being told by Fuelco to inspect the passenger vehicles for their commutes; he testified that, "I thought it was standard with every fuel company," so he just assumed that performing vehicle inspections was the standard at Fuelco. (Hearon Depo, App. at 317-18, at 56:6–57:7; 57:8–12.) The Plaintiffs are not similarly situated as to a common practice by Fuelco to require vehicle inspections and then not pay overtime for commute time.

> **b. Plaintiffs are not similarly situated as to how much time each spent performing a vehicle inspection.**

The alleged time many Plaintiffs spent on a pre-trip vehicle inspection was also *de minimis*.[2] An important factor in determining whether a claim is *de minimis* is the amount of daily time spent on the additional work. *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984). Even if an activity might otherwise be compensable, courts may disregard *de minimis* claims concerning only a few seconds or minutes of work beyond the scheduled working hours. *Lawrence v. New Indus.*, LLC, No. 16-994, 2019 U.S. Dist. LEXIS 95839, at *27 (W.D. La. 2019). Although no rigid rule can be applied with mathematical certainty, the Fifth Circuit has recognized that "[m]ost courts have found daily periods of approximately 10 minutes *de minimus* even though otherwise compensable." *Id.* (quoting *Von Friewalde*, 339 F. App'x at 454) (supporting citations omitted).

The time spent on vehicle inspections varied based on each Plaintiff and whether each Plaintiff was performing the inspection with other employees, and the time spent was often *de minimis* as a

---

[2] Fuelco contends that the time allegedly spent on vehicle inspections was *de minimis* for all Plaintiffs and will also be the subject of a motion for summary judgment. For purposes of this Motion, to the degree that any Plaintiff's time spent on vehicle inspections was not *de minimis* as a matter of law, Fuelco argues that the variance among the individual Plaintiffs' time being *de minimis* prevents them from being similarly situated.

matter of law. The Plaintiffs' testimony regarding the time they spent on a given vehicle inspection varied from 3 minutes 25 seconds (Valenzuela Depo, App. at 475–76, 35:8–36:24, 39:1–23) to 30 minutes (Hearon Depo, App. at 316, 49:6–25). Others gave ambiguous estimates, such as "not long" (Dixon Depo, App. at 290, 42:5–11), "it depends" (Irving Depo, App. at 339, 55:21–25), or "it could take 5 [minutes], one day it could take 25. . . can't give you a definite number for every day. . . it varies" (Hearon Depo, App. at 316, 51:4–20.)

The Plaintiffs' testimony and discovery responses illustrate that the pre-trip activities they contend made their commute times compensable, when they performed them, and how much time they spent on them is a mixed bag. The proof regarding the time one Plaintiff spent inspecting the vehicle before or after his commute is not reasonably representative of the other Plaintiffs. It varies for all of them. Consequently, the Plaintiffs are not similarly situated as to whether their commute times are compensable. This further demonstrates that Fuelco would be foreclosed from raising the defense that the inspections were *di minimis* in a class setting because some may be *di minimis*, and others may not.

### (2) Other pre and post-trip activities.

There is no uniformity among the bases for the Plaintiffs' respective overtime claims. Although some of those activities could be integral and indispensable to their work (which Fuelco disputes), some may not be. Which activities were compensable and how many of them each Plaintiff claims to have performed matters, because the Court must also examine whether the total time each Plaintiff spent on such activities was *de minimus*. Even if a task a Plaintiff performed after his commute was otherwise compensable for overtime, as outlined above, if the total time spent on an integral and indispensable task was *de minimis*, then the time for that activity and the accompanying commute time was not compensable.

Some Plaintiffs claim in their interrogatory responses that they would unload the vehicle after arriving at the hotel. Most do not state, generally or specifically, what they unloaded. Regardless, this was not part of every commute, if any. Plaintiff Irving testified that equipment was only taken to and from the frac site and the yard at the beginning and end of a project. (Irving Depo, App. at 337, 37:20-38:18) The Plaintiffs who were deposed and who claimed to unload anything at the end of their commutes testified that was not a task they needed to perform after every trip. (Hill Depo, App. at 328, 130:5-25; Babbitt Depo, App. at 281, 44:5-24; Irving Depo, App. at 340, 69:1-11) Plaintiff Exposito testified that all "equipment" stayed at the frac site. (Exposito Depo, App. at 308, 26:5-20).

Plaintiff Dixon referred to unloading "equipment," (Dixon Response to Interrogatory No. 2, App. at 61) and Plaintiff Tristan referred to unloading "gear." (Tristan Response to Interrogatory No. 2, App. at 106). But those references refer to their personal protective equipment ("PPE"). Taking one's PPE with them as they exit the van hardly constitutes "unloading," and the simple act of "unloading" PPE is not work under the FLSA. The donning and doffing of generic protective gear is a non-compensable, preliminary task under the Portal-to-Portal Act, and other district courts have followed that holding. *Von Friewalde* at 454. When an employee's activity "takes all of a few seconds and requires little or no concentration," then the activity is "properly considered not work at all." *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1289 (10th Cir. 2006). Moreover, "[r]equiring employees to show up at their work stations with such standard equipment [as a hard hat, safety glasses, earplugs, and safety shoes] is no different from having a baseball player show up in uniform, . . . or a judge with a robe. It is simply a prerequisite for the job, and is purely preliminary in nature." *Id*; *see also* 29 C.F.R. § 790.7(d). Consequently, "the plaintiffs' travel to and from the well sites was not integral and indispensable to their principal activities merely because they were required to carry their personal safety equipment along with them." *Id.* So any time spent on those activities cannot be included in the

determination of whether the time spent on preliminary or postliminary activities was *de minimis*, because such activities are "not work at all."

Some Plaintiffs claim they had to complete "paperwork" when they returned to the hotel. But only the lead frac fuel technicians had any paperwork duties. (*See*, Sandoval Depo, App. at 23:7–9.) But the amount of time on paperwork was both occasional and *de minimis*. In most cases, the paperwork was completed at the frac site; the only task remaining upon arriving at the hotel was to send it to a supervisor or dispatch via email or text message—and that was only because the occasional lack of cell phone service at the frac site prevented them from sending the paperwork earlier. (Luna Depo., App. at 355,45:9–47:5; Sandoval Depo, App. at 378, 23:23–26:14.) So whether paperwork was part of a Plaintiff's postliminary activities differed daily based on whether he had a cell phone signal. Regardless, the time spent on such tasks were also *de minimis*.

The "paperwork" some Plaintiffs were completing after their commute was merely filling out their timecards for the day. (*E.g.*, Guajardo, App. at 111; Michael Johnson, App. at 146.) But this was a simple daily task and there was nothing about the task that required it to be completed after the Plaintiff returned to the hotel. The Plaintiffs typically turned in their timecards by photographing them and then emailing or text messaging them to a supervisor. Like the paperwork completed by the lead frac fuel technicians, doing so after they returned to the hotel was only necessary if cell phone service at the frac site and, therefore, was also occasional and *de minimis*.

As shown with vehicle inspections, the Plaintiffs' testimony demonstrates that the time they spent on paperwork differed from Plaintiff to Plaintiff and was *de minimis* as a matter of law. Thus, whether the total time any Plaintiff spent on integral and indispensable pre and post-trip tasks was *de minimis* varies among the Plaintiffs.

The evidence regarding the compensability of the Plaintiffs' commute time to the frac site based on the Plaintiffs' pre-trip activities, is different from the evidence regarding the compensability

of the Plaintiffs' commute time back to the hotel based on their post-trip activities. The activities the Plaintiffs claim to have performed for each leg of their commutes are different, and the distribution of those activities among the Plaintiffs is different, which further complicates the evidence necessary for the Plaintiffs to prove the compensability of their commute time. The commute to the frac site could be compensable for some Plaintiffs and not others, and the commute time back to the hotel could be compensable for a different set of Plaintiffs and not others. Further, for each leg of the commute, the evidence regarding the compensability of each Plaintiff's commute time varies from Plaintiff to Plaintiff, because the pre and post-trip activities they claimed to perform varied. Moreover, as shown, even for a single Plaintiff, whether, when, and how long he performed some of the activities fluctuated, thereby varying whether and when such time was allegedly compensable and how much of the time was compensable. Thus, at trial Fuelco must individually challenge (a) whether the Plaintiffs performed those activities (because the evidence from other Plaintiffs conflicts), (b) how often they performed those activities (based on evidence from other Plaintiffs), and (c) how long they performed those activities (to challenge whether the time spent was *de minimis*). And Fuelco must challenge each Plaintiff's vehicle inspections for both pre-commute and post-commute, separately, because not every Plaintiff who performed a pre-trip inspection also performed a post-trip inspection. Plaintiffs are not similarly situated in the overtime claims for commute time and cannot proceed as a collective action.

## C. STANDBY TIME—THE PLAINTIFFS ARE NOT SIMILARLY SITUATED AS TO THEIR CLAIMS FOR STANDBY TIME

The Plaintiffs are only similarly situated in their claim for overtime for Standby work (a) if they have similar bases for claiming overtime on Standby work and (b) if their failure to receive overtime was due to a common plan or policy by Fuelco to deny them overtime. Neither is present among these Plaintiffs.

As with their commute time, the Plaintiffs are not similarly situated in claims of overtime for Standby time, because different Plaintiffs rely on different bases and facts, and any failure to receive overtime is due to how they recorded their time, not a policy of Fuelco to deny them overtime.

Generally, Plaintiffs testimony appears to assert four main bases for claiming overtime for Standby time:

      (a)     that their Standby was time on-call at or near the hotel while not working but waiting to be called to the frac site ("on-call");

      (b)     that their Standby time was time at the frac site while the customer's rig was down ("down time");

      (c)     that their Standby time was work time at Fuelco's yard ("yard time"); and/or

      (d)     their Standby time was for compensable work performed while on-call, other than at Fuelco's yard ("other work").

Importantly, what one Plaintiff may refer to as "Standby" time might be different from what another Plaintiff might think of as "Standby" time. (Dixon Depo, App. at 292, 129:7–12.) Because the Plaintiffs' complaints are dissimilar, their evidence is not representative, and their claims should not proceed as a collective action.

Plaintiffs acknowledge that they were sometimes told not to come to work and to remain on-call in case they were needed at the frac site or elsewhere. (E.g., Babbitt Depo, App. at 284, 73:24–74:7; Hearon Depo, App. at 319, 68:15–69:19; Sandoval Depo, App. at 383, 76:23–77:22; Zuniga Depo, App. at 489, 84:19–24.) Unless otherwise given a work assignment, the only restrictions while on-call were that they remain sober and within a reasonable distance from the frac site or hotel. (*E.g.*, Babbitt Depo, App. at 284, 74:8–14; Hearon Depo, App. at 320, 69:20–70:1; Sandoval Depo, App. at 383, 77:14–78:2; Zuniga Depo, App. at 490, 85:9–16.) Fuelco denies that on-call time is compensable. However, Fuelco acknowledges that any down time while at the frac site was compensable, but it denies that Plaintiffs were not paid overtime for down time at the frac site.

Nonetheless, how Plaintiffs were compensated for Standby time was not due to a plan or policy by Fuelco to deny them overtime but the result of the differing ways the Plaintiffs chose to record their Standby time on their timecards. Plaintiffs recorded their time differently, and that is what affected how their time was paid. Moreover, the Plaintiffs cannot now identify which Standby time was on-call and which was work time, how often and for how long they were called to perform work when initially only on-call. Some of the Plaintiffs' bases are potentially compensable, some are not, and some depend on the facts and circumstances of the work they allegedly performed, and all depend on whether each Plaintiff recorded his time in a manner that allowed Fuelco to see that the time was compensable for overtime. So each Plaintiff's proof, and Fuelco's defenses to each Plaintiff's claims, are disparate and not representative of all Plaintiffs.

### (1) *On-call Time*

Some Plaintiffs claim in their depositions that on-call time is compensable. At least four of the deposed Plaintiffs testified that on-call time should be compensable, even though they were not working, because they could not go home and were available to work. (Exposito Depo, App. at 311, 50:5–8; Hearon Depo, App. at 320, 69:20–71:20; Mitchell Johnson Depo, App. at 346, 71:16-72:4; Sandoval Depo, App. at 383, 76:23–77:22.) They agreed that the only restrictions on their time while on on-call were that they remain sober and remain a reasonable distance from the hotel or frac site. Babbitt Depo, App. at 284, 74:8–14; Hearon Depo, App. at 320, 69:20–70:1; Sandoval Depo, App. at 383, 77:14–78:2; Zuniga Depo, App. at 490, 85:9–16.) Fuelco's defense is that such on-call time is not compensable. *See Bright v. Hous. Nw. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 677–78 (5th Cir. 1991) (an ability to go "virtually anywhere" within twenty- or thirty-minute of the employer's place of business strongly indicates that an employee was free to use his time for his own purposes and that the time was, therefore, not compensable.).

**DEFENDANT FUELCO'S MOTION FOR**
**DERCERTIFICATION OF COLLECTIVE ACTION**                    **Page 17**

However, this basis for overtime for Standby time is not shared among all Plaintiffs. In their responses to Fuelco's Interrogatory number 4, asking them to state the basis for their contention that that "time spent by you on standby or on-call at a hotel or mancamp, or otherwise away from the frac site, is compensable work that is subject to overtime pay," none of the Plaintiffs claim their on-call time is compensable. (See Plaintiffs' Response to Interrogatory No. 4, generally, App. at 13–278) The deposition testimony of Exposito, Hearon, Mitchell Johnson, and Pablo Sandoval, as cited above, each contradicts their interrogatory responses. Furthermore, three Plaintiffs confirmed that they did not recall ever being on-call at the hotel. (Bray Resp Rog 4, App. at 28; Miranda Resp Rog 4, App. at 183; Valenzuela Resp Rog 4, App. at 258) Another Plaintiff said that such time was "very rare." (Robert T. McGarity Depo, App. at 362, 53:14–23.) According to Plaintiff Valenzuela, the only instance when the frac site was down and he was on-call at the hotel was when he heard someone had overdosed. (Valenzuela Depo, App. at 477, 61:20–62:30.) Although Plaintiff Irving confirmed that "Standby" time was at the hotel, he also testified that he was not complaining about overtime for on-call time in this lawsuit. (Irving Depo, App. at 335-36, 12:35–13:15.) Thus, evidence in support of Exposito, Hearn, Mitchell Johnson, and Sandoval is not representative of the other Plaintiffs, because the others do not claim overtime for on-call time while not working. In a class setting, Fuelco's defense to these claims would be improperly foreclosed and prejudice Fuelco.

### (2) Down time at the frac site.

In response to Fuelco's Interrogatory No. 4, asking Plaintiffs to state the basis for the their contentions regarding Standby time, 52 of the 58 Plaintiffs claim that all or some of their "Standby" time was down time at a frac site, for which they never received overtime pay. (*See* App. at 10-279, Responses to Interrogatory No. 4; *see also* Doc. 55, Complaint at pp. 9–10.)

Of the 19 Plaintiffs deposed, however, the sworn testimony of 7 Plaintiffs, more than one-third, contradicts their unsworn interrogatory responses by confirming that (a) they are not

complaining about down time at the frac site (Hill Depo, App. at 327, 118:19–119:5), (b) did not have any down time at the frac site (Babbitt Depo, App. at 283, 67:10–68:2 & 73:24–74:3), (c) that all of their "Standby" time was at the hotel or mancamp, not on the frac site (Hearon Depo, App. at 319-21, 68:11–69:19, 87:10–18), (d) that they are unable to say that they did not receive overtime for all of their down time at the frac site (Eureste Depo, App. 303, 117:16–23, 118:13–17), or (e) that the time they recorded as "frac time" included *all* time spent at the frac site and was not recorded as "Standby," because they were always working when at the frac site (Exposito Depo, App. at 310, 46:14–47:3, 48:9–19; McGarity Depo, App. at 363, 106:23–25; Pafford Depo, App. at 374, 51:23–52:2.) This testimony, as compared to their interrogatory responses, is further summarized in chart form in the Appendix at page 9. Further, Five Plaintiffs either failed to respond to Fuelco's Interrogatories or their response did not mention down time at the frac site. (Barrera—failed to respond to interrogatories; Carter—failed to respond to interrogatories; Rojas—failed to respond to interrogatories; Mario Garza Resp Rog 4, App. at 98, Sandoval Resp Rog 4, App. at 223.)

With more than one-third of the deposed Plaintiffs giving sworn testimony that that they are not claiming unpaid overtime for down time at the frac site, this implies that more than one-third of the remaining 47 Plaintiffs would similarly testify. This is another basis for overtime pay that is shared by some, but not all Plaintiffs, so evidence of their claims for down time cannot be representative of all Plaintiffs, thus preventing the Plaintiffs from being similarly situated in their overtime complaints against Fuelco.

### (3) Yard Time

According to Plaintiffs' responses to Fuelco's Interrogatory No. 4, about 10 Plaintiffs, 17% of them claim they performed work at Fuelco's yard as part of their Standby time for which they were not paid overtime. (Biddle, App. at 23: Collins, App. at 53: Dowell, App. at 68; Victor Flores, App. at 93; Hill, App. at 133; Michael Johnson, App. at 148; Mathis, App. at 163; Robert H. McGarity, App.

173; Moreno, App. at 188; Talese, App. at 238.) Conversely, Plaintiffs' response to Interrogatory 4 also show that at least 10 Plaintiffs do not make such a claim for Standby time further demonstrating the dissimilarity among the bases for Plaintiffs' overtime claims. (Campos, App. at 38; Espinoza, App. at 73; Alfonso Flores, App. at 88; Guajardo, App. at 113; Mendez, App. at 143; Propeck, App. at 203; Rios, App. at 208; Aaron Segovia, App. at 228; Tristan, App. at 108; Williams, App. at 108).)

Moreover, some Plaintiffs received overtime pay for Standby time worked at Fuelco's yard, which shows the Plaintiffs were not subject to a common plan or policy by Fuelco to deny them overtime compensation for such Standby time. Plaintiffs recorded their time differently, and that is what affected how their time was paid. Many Plaintiffs were paid overtime for work at Fuelco's yard when they indicated on their timecards that they were performing work, instead of simply writing "Standby" on the card with no indication that the time was for work in the yard instead of being on-call.

For example, when he was not on the frac site, Plaintiff Eureste was specific in how he recorded his time. If he was commuting to and from the frac site, then he recorded that as "Drive Time" or "DT." (*e.g.* Eureste Timecards, App. at 515–16.) If he was working at Fuelco's yard, then he recorded that on his timecards as "Yard Time." (*e.g.*, Eureste Timecards, App. at 514.) Moreover, when he worked more than 40 hours per week at the yard, he was paid overtime. For example, for the week of November 26, 2017, he recorded 54.4 hours of "Yard Time," (*id.*), and he was paid his regular rate of pay for the first 40 hours and his overtime rate for the 14.5 hours above 40 (Eureste Paystubs, App. at 519). On another occasion, he worked 60.5 total hours at the frac site and the yard in the same week, but he made sure to specify that the non-frac site hours were spent at Fuelco's yard. (Eureste Timecards, App. at 517.) Consequently, Fuelco paid him overtime for 20.5 hours. (Eureste Paystubs, App. at 518.) The only time in excess of 40 hours for which he was not paid overtime wage was for

3.5 hours of commute time, recorded on the timecard as "Drive Time". (Eureste Timecards, App. at 517; Eureste Paystubs, App. at 518.)

When Plaintiff Valenzuela was working at Fuelco's yard instead of the frac site, he identified that his time was spent working and not on-call. For example, during the week of November 6–11, 2017, he specified "yard work" on his second timecard and included the type of work he performed that day, such as "mowing grass," or "prefuel" for 34 hours of work time; he also had 12 hours of "drive time" for a weekly total of 46 hours. (Valenzuela Timecards, App. at 520.) Contrary to Plaintiffs' allegations that Fuelco had a plan or policy to avoid paying the Plaintiffs overtime for such work, Fuelco paid Valenzuela his regular rate for 40 hours and overtime for the remaining 6 hours. (Valenzuela Pay Stubs, App. at 521; Valenzuela Depo, App. at 478, 82:25–85:6.)

However, when not at the frac site or commuting to and from it, most Plaintiffs simply recorded their eight hours in a day as "Standby," with no other information. (*See, e.g.,* Zuniga Timecards, App. at 522–23.) According to Plaintiff Irving, Standby "could be anything." (Irving Depo, App. at 341, 98:25–99:5.) Some say they may have been called during that day to perform work at the frac site or yard but did not reflect any of that on the timecard beyond the term Standby. Plaintiff Hill testified that he never wrote down any "Standby" time. (Hill Depo, App. at 326, 105:22–106:4.) With no specifics on their timecards, Fuelco had no way to know that the Plaintiffs were performing work instead of being on-call at or near the hotel; even the Plaintiffs cannot identify whether the time was compensable work time or non-compensable on-call time. (*See, e.g.* Zuniga Depo, App. at 491, 90:17–24 & 91:13–92:24; Eureste Depo, App. at 301, 105:20–106:15.) Therefore, as some Plaintiffs received overtime for Standby yard time, other Plaintiffs' failure to receive overtime for Standby yard time was not due to a common practice, plan, or policy by Fuelco to deny them overtime. It was due to those Plaintiff's failing to communicate to Fuelco that the time they recorded was for work, not for being on-call. The Plaintiffs' claims are largely due to their own choices to incorrectly report their time, so

they are estopped from claiming compensation inconsistent with their own timecards. *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) ("grant[ing] a directed verdict on the basis that the appellant was estopped and could not profit from her own wrong in furnishing false data to the employer."). Moreover, this defense by Fuelco involves the need to confront each Plaintiff with their specific timecards and pay stubs to show how they recorded such time and whether they received overtime compensation for it. A collective action assuming that all circumstances were similar for all Plaintiffs would be fundamentally unfair to Fuelco by denying it adequate opportunity to refute the specifics of each Plaintiff's claims.

### (4) Other work

In the Plaintiffs' responses to Fuelco's Interrogatory number 4, asking them to state the basis for their overtime claim for Standby time, many claimed that that their "Standby" time was compensable because they were still at the frac site, but several Plaintiffs also listed more specific tasks they claimed they performed while on Standby. However, as with the Plaintiffs' other claims, the bases for the compensability of such work varied. Some of the specific examples given clearly related solely to work performed that could only have been performed at the frac site. Others listed specific tasks that were at Fuelco's yard or could only have been performed at Fuelco's yard. The dissimilarity among the Plaintiffs created by those claims is addressed above. But at least 15 Plaintiffs, 26%, listed tasks such as inspecting the vehicle/van, cleaning or washing the vehicle/van, completing paperwork, making sure they had all of they equipment or tools, and/or tending to emails. (Babbitt, App. at 18; Campos, App. at 38; Espinoza, App. at 73; Alfonso Flores, App. at 88; Guajardo, App. at 108; Hearon, App. at 123; Luna, App. at 58; Mathis, App. at 163; Robert T. McGarity, App. at 178; Mendez, App. at 143; Moreno, App. at 188; Rios, App. at 208; Sandoval, App. at 223; Williams, App. at 273; Zuniga App. at 278.) These are, essentially, the same tasks the Plaintiffs generally allege they performed before and after their commutes to claim their commute time was compensable. More than 25% of them

**DEFENDANT FUELCO'S MOTION FOR**
**DERCERTIFICATION OF COLLECTIVE ACTION**                    **Page 22**

also attempt to use these same tasks to claim that their time on-call was compensable. (Alvarado, App. at 11; Biddle, App. at 21; Collins, App. at 51; Espinoza, App. at 71; Steve Garza, App. at 101; Guajardo, App. at 111; Hearon, App. at 121; Michael Johnson, App. at 146; Luna, App. at 56; McDowell, App. at 166; Robert T. McGarity, App. at 176; Mendez, App. at 141; Mukes, App. at 191; Rios, App. at 206; Sandoval, App. at 221; Talese, App. at 236; Valenzuela, App. at 256; Zuniga, App. at 276.) If they were able to perform such tasks before and after their commutes, then these tasks clearly did not consume much time and did not take an eight-hour day. (Eureste Depo, App. at 301, 105:20–106:15.)

Moreover, because the Plaintiffs simply wrote "Standby" on their timecards and did not indicate that they were performing work tasks, there was no way for Fuelco to know that they were not simply at the hotel, and the Plaintiffs cannot now verify that they performed any such tasks on a given day or for how long. (Zuniga Depo, App. at 491, 90:17–24 & 91:13–92:24; Eureste Depo, App. at 301-2, 107:21–109:5.) Even if they performed such tasks while, on-call, they could not be a reasonable basis for making an entire 8-hour day on-call compensable. As this basis for overtime for Standby time is neither shared by all Plaintiffs nor uniform among those Plaintiffs who urge it, their claims and evidence are not representative of all other Plaintiffs. Fuelco must refute the specific facts for each Plaintiff, and the Plaintiff's collective action should be decertified.

Plaintiffs were not subject to a single decision, policy, or plan that violated the FLSA. There was no single decision policy or plan, because failure to pay overtime, if any, caused by combination of issues. So any failure to pay overtime was not the result of a single plan or policy. The question is if there is "a demonstrated similarity among the individual situations…some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice.]" *Proctor* at 280.

**DEFENDANT FUELCO'S MOTION FOR DERCERTIFICATION OF COLLECTIVE ACTION**                                    **Page 23**

D. **THE FACTUAL CIRCUMSTANCES REGARDING THE COMPENSABILITY OF THE PLAINTIFFS' COMMUTE TIME ARE HIGHLY INDIVIDUALIZED, SO THE CASE CANNOT BE FAIRLY TRIED AS A COLLECTIVE ACTION WITH REPRESENTATIVE EVIDENCE.**

The first factor regarding whether the plaintiffs are similarly situated is the disparate factual and employment settings of the individual plaintiffs. *Casanova* at *7 (citing *Mooney* at 1213 n.7). The evidence for each Plaintiff's compensable time differs from the evidence for the others (as do Fuelco's defenses to each Plaintiff). There is no uniformity between their contentions, the alleged facts supporting their contentions, and the evidence supporting those alleged facts. Moreover, since none of the Plaintiffs' timecards contain any information about whether the claimed activities were performed, when they were performed, and how much time was spent on them, each Plaintiff will have to testify regarding his specific pre-commute activities, post-commute activities, to make each commute compensable. Each Plaintiff will also have to offer evidence of his individualized claim for Standby time. Consequently, there will have to be 58 mini trials, which defeats the purpose of a collective action and necessitates decertification.

District courts have granted motions to decertify where there was great variety in the factual allegations among the individual Plaintiffs. *Proctor* at 281. "The more material distinctions revealed by the evidence, the more likely the district court is to decertify the collective action." *Id.* at 280. (citing *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007)). For example, in *Johnson v. TGF Precision*, the plaintiffs alleged that hourly employees were not being paid overtime and were working off the clock. *Johnson v. TGF Precision Haircutters, Inc.*, No. H-03-3641, 2005 U.S. Dist. LEXIS 44259, at *6 (S.D. Tex. 2005). When the defendant then moved to decertify the class, the Court found that the evidence showed "a substantial variance of experiences by different Plaintiffs under different managers and at different shops around Texas." *Id.* at *12. For example, the plaintiffs at some stores stated that they were not allowed to clock in when they worked for 15 minutes before the store opened. *Id.* At other stores, employees did clock in for that time. *Id.* Additionally, the plaintiffs varied

on whether they were required to clock-out when waiting for customers and even if they were allowed to leave the store when clocked-out and waiting. *Id.* The court concluded that although the evidence established that "some Plaintiffs may have prima facie claims for FLSA violations at different times, in different places, in different ways, and to differing degrees"; the overall "evidence of varied particular violations" was not enough to prove a "uniform, systematically applied policy of wrongfully denying overtime pay to Plaintiffs." *Id.* at *22. The "highly variable" nature of the alleged violations that differed by manager meant that the class was decertified. *Id.* at *22.  The facts here are no different – each jobsite was different, the crews were different, the hotel locations were different, and the employees pre-and-post trip activities, if any, were different.

The second factor to consider is whether the various defenses available to Defendant appears to be individual to each Plaintiff. *Snively*, 314 F. Sup. 3d at 740. Because the factual bases for the 58 Plaintiffs' commute and Standby time being compensable are individual to each Plaintiff, their evidence is not consistent with, and representative of, other Plaintiffs. Fuelco must individually challenge each Plaintiff based on their unique facts and claims. One of the purposes of trying several overtime pay claims in a collective action is to avoid the inefficiencies of conducting multiple individual trials on the same factual and legal issues. *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 587 (E.D. La. 2008); *see Hoffmann-LaRoche*, 493 U.S. at 173; *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003); *Braunstein v. Eastern Photographic Labs.*, 600 F.2d 335, 335 (2d Cir. 1979). But those efficiency gains cannot come at the expense of a defendant's ability to prove a statutory defense without raising serious concerns about due process. *Big Lots*, 561 F. Supp. 2d at 587. Fuelco cannot be expected to come up with "representative" proof of its defenses when the plaintiffs cannot reasonably be said to be representative of each other. *See Big Lots* at 587. On the other hand, trying 58 individuated defenses is not an option in this case if it is certified as a collective action. The collective

action device does not effect its purposes when it only puts the defendant between a rock and a hard place. *See id.*

The third factor to weigh requires an examination of fairness and procedural considerations. *Snively* at 742–43. Management of this case and procedural concerns also support decertification. Representative testimony can sometimes suffice so that not every plaintiff must testify. *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 829 (5th Cir. 1973). Here, however, there is no consistency among the bases of the Plaintiffs' claims or among the testimony supporting their bases. *See Proctor* at 283 ("In this case, there is no consistency among the testimony, there is no consistently applied policy resulting in working off the clock, and the time spent working off the clock is not alleged to be uniform or of a predetermined duration."). The Plaintiffs have not suggested any alternative ways to try the case or any ways to address the disparate factual allegations of the 58 Plaintiffs. *See id.*

The Plaintiffs' evidence shows that the jury will not be able to draw any reliable inferences about the compensability of the Plaintiffs' commute and Standby time as a class. *Big Lots*, 561 F. Supp. 2d at 587. A collective action is appropriate when there are common issues of fact and common issues of law. *Id.* When there is agreement between the parties about what employees did, or there is a reliable showing that employees performed "substantially similar work," a court may properly and easily try plaintiffs' claims collectively. *Id.* at 587–88 (citing *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991); *see also, Donovan v. Williams Oil Co.*, 717 F.2d 503, 505 (10th Cir. 1983) (describing representative witness testimony as consistent across witnesses in affirming judgment in favor of plaintiffs); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 471–72 (11th Cir. 1982) (affirming backpay award on basis of consistent testimony of non-exempt employees that established employer's clear pattern and practice of overtime pay violations). But when there are significant differences in employment experiences, as the evidence presented here shows, the procedural advantages of a collective action

evaporate, and the Court's confidence that a just verdict on the merits can be rendered is seriously undermined. *Big Lots* at 588.

Were the Court to rule in plaintiffs' favor, it would do so based on proof that is not representative of the whole class, and the verdict could result in liability on the defendant in a magnitude that is not likely to be warranted in reality. *See id.* at 587. The testimony of opt-in plaintiffs show that there is significant diversity among plaintiffs in terms of the tasks they performed and on which they rely for the compensability of their commute time. *See id.* It would be an injustice to proceed to a verdict on the merits that results in a binding class wide ruling based on such disparate evidence. *Id.* at 587; *cf., DeSisto*, 929 F.2d at 794 (explaining that representative testimony must give rise to just and reasonable inferences for a court to rely on it in rendering a judgment on the merits).

The best example of this is Exposito. Mr. Exposito testified that he did not inspect pre-trip, and nothing that would make his commute time compensable. If the class is not de-certified, and the jury finds that commute time is compensable based upon other class members, Mr. Exposito would recover money under the FLSA to which he is not entitled, and Fuelco would be prejudiced.

## IV.
## CONCLUSION

In sum, the plaintiffs in this conditional class have different facts and circumstances surrounding the most critical issues to be decided – whether the activities preliminary and post-liminary to their commutes are sufficient to make their commute time compensatory, and facts surrounding their on-call time, if any. It would be inappropriate, and unfairly prejudice Fuelco, if Plaintiffs were able to group themselves together to obtain one ruling applicable to all of them when they are not similarly situated, and have directly contradicting facts and circumstances on the most critical issues to be decided. WHEREFORE, Fuelco respectfully requests that this Court grants its Motion, decertify the Plaintiff's collective action, and proceed only as to the named Plaintiffs, and such other relief to which it may be entitled.

**DEFENDANT FUELCO'S MOTION FOR**
**DERCERTIFICATION OF COLLECTIVE ACTION**                                        **Page 27**

Respectfully submitted,

/s/ *W. Craig Stokley*
W. CRAIG STOKLEY - State Bar No. 24051392
cstokley@stokleypllc.com
JAMES O. CREWSE - State Bar No. 24045722
jcrewse@stokleypllc.com
TODD J. LILES - State Bar No. 00796956
tliles@stokleypllc.com
**STOKLEY PLLC**
8150 N. Central Expy, Suite 550
Dallas, Texas 75206
Telephone: (214) 295-6410
Facsimile: (214) 295-6412

**ATTORNEYS FOR DEFENDANT
FUELCO ENERGY LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 18th day of December 2020, a true and correct copy of the foregoing was served to counsel of record by delivering the same to the person listed below in the manner indicated below:

**VIA ECF**
Josh Sanford
SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 411
Little Rock, Arkansas 72211


/s/ *W. Craig Stokley*
W. CRAIG STOKLEY

**DEFENDANT FUELCO'S MOTION FOR
DERCERTIFICATION OF COLLECTIVE ACTION**                    **Page 29**