**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JUAN SEGOVIA and VICTOR FLORES, Each Individually and on behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § | |
| vs. | § | Civil Action No. 5:17-CV-1246 |
| | § | |
| FUELCO ENERGY LLC, | § § | |
| Defendant. | § § | |

**DEFENDANT FUELCO ENERGY, LLC'S RESPONSE TO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendant, Fuelco Energy LLC ("Fuelco" or "Defendant"), files this Response to Plaintiffs'

Motion for Attorneys' Fees and Costs (Doc. 176) as follows:

Fuelco consents to the Motion proceeding before the Magistrate Judge assigned to this case.

## I.    SUMMARY

At the very beginning of this case, counsel for Fuelco called Plaintiffs' counsel (Chris Burks,

an attorney with the Sanford law firm) and explained that, contrary to the allegations in Plaintiffs'

Original Complaint, Fuelco paid overtime to the Plaintiffs. His response was telling—he explained

that the Sanford Law Firm files their cases as unpaid overtime cases, and if it turns out that an overtime

premium was paid, then they just re-allege the case as an undocumented time case because that easily

defeats summary judgment. But instead of amending Plaintiffs' allegations and focusing on claims

based on facts, Plaintiffs' counsel continued with the baseless initial claims, later abandoned them,

then migrated to undocumented time claims focused mainly on a theory of pre and post trip activities

that were dismissed on summary judgment.  They finally settled on rate of pay claims that Fuelco's

payments were non-discretionary bonuses—claims requiring little discovery or motion practice.

1

The claimed damages were initially $29,750 (prior to liquidation) for each Plaintiff. Doc. 24 ¶30. For the 59 Plaintiffs, the total amount claimed was $3,510,500.00 after liquidation. Ultimately, after every claim with any real damages were abandoned by Plaintiffs, or summarily dismissed by the Court, Plaintiffs were left on the eve of trial with a total damage claim of $105,042 (prior to liquidation). The parties settled, and each Plaintiff received, on average, $1780.37 (some as little at $50) for a total of $105,042. *See Exhibit A* (Dec. of W. Craig Stokley).  Plaintiffs' counsel, however, seek a reward of over $400,000.00 in attorneys' fees and costs.

It is settled law in this district/division that Josh Sanford's rate should be $325; Meredith McEntire's rate should be $258; Vanessa Kinney's rate should be $250; and Sean Short's rate should be $200. Because most of the time in the case was spent pursuing losing theories (voluntarily abandoned or summarily dismissed), most of the time should be reduced. In summary, Mr. Sanford's hours should be reduced from 257.6 to 91.71; Ms. Kinney's should be reduced from 396.7 to 106.37; Mr. Short's should be reduced from 366.4 to 179.37; and Ms. McEntire's should be reduced from 12.1 to 9.94. Finally, the *Johnson* factors support a substantial downward adjustment. Among many factors, some of the most compelling are (a) that Plaintiffs went from seeking over $3.5 million to $105,042; and (b) Plaintiffs seek $400,000 in fees and costs when they only recovered $105,048 for their clients— many of whom received less than $500. Applicable case law shows that in cases like this one, a 67% reduction is warranted. As such, Fuelco respectfully requests that the Court award Plaintiffs' counsel **$36,550.46** in attorney fees and **$7,617.26** in costs for recovering the $105,048 for their clients in this case. *See Exhibit 19* (Chart summarizing same).  That makes sense, and is reasonable.

## II.   GOVERNING LAW

In a Fair Labor Standards Act ("FLSA") case, the District Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In the Fifth Circuit, attorneys' fees are

calculated by the lodestar method—multiplying the number of hours reasonably expended by an appropriate hourly rate. *Cruz v. Maverick Cty.*, 957 F.3d 563, 574 (5th Cir. 2020). After the lodestar method is applied, courts use a twelve-factor test to determine whether counsel's performance requires an upward or downward adjustment from the lodestar. *Id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)).[1]

## III.   LODESTAR ANALYIS OF PLAINTIFFS' ATTORNEYS' FEES

### A.   Plaintiffs' Counsels' Hourly Billing Rates are Unreasonable.

The first step in determining the lodestar is determining a reasonable hourly rate. *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 U.S. Dist. LEXIS 59436, at *7 (W.D. Tex. 2019) (Bemporad, J.), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 59242, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019) (Ezra, J.). Reasonable hourly rates are determined based on prevailing rates for attorneys of similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson*, 465 U.S. 886, 895, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). The Fifth Circuit has interpreted the "relevant community" to mean the city in which the district court sits. *See, e.g., Walker v. United States HUD*, 99 F.3d 761, 770 (5th Cir. 1996).

### 1.   <u>Josh Sanford</u>

Plaintiffs seek fees of $500 per hour for attorney Josh Sanford. But in *Furlow v. Bullzeye Oilfield Servs., LLC*, the Western District of Texas, San Antonio Division, rejected this hourly rate for Mr. Sanford. Magistrate Judge Bemporad found that neither the size of Mr. Sanford's firm, nor the nature

---

[1] The "*Johnson* factors" are: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or the circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." *Id.* at 574 n.3 (quoting *Johnson*, 488 F.2d at 717–19).

of the litigation, nor Mr. Sanford's specific credentials justified a $500 per hour rate. *Furlow*, 2019 U.S. Dist. LEXIS 59436, at *8. In *Furlow*, Mr. Sanford stated in his declaration that he managed fifteen attorneys. *Id.* In Mr. Sanford's Declaration attached to the Motion, he does not specifically state the size of the Sanford Law Firm but refers to the firm's website. Doc. 176-5 at ¶ 3. Judge Bemporad held that, although Plaintiffs' counsel's firm is not particularly small, it is not large enough to justify the type of upward adjustment that a large law firm may demand from its clients. *Furlow* at *8.

Mr. Sanford does not claim to be board certified. *Id.* at *9; *see also* Doc. 176-5. Plaintiffs cite to *Furlow* in their motion for the proposition that "Mr. Sanford's extensive experience in these types of cases warrants an upward adjustment from the $258 average hourly rate." Doc. 176 at 10 (citing *Furlow* at *11). But the court in *Furlow* also found "insufficient justification for an upward adjustment to nearly double the median rate," and the court recommended that "Mr. Sanford's hourly rate be set at $325." *Furlow* at *9, 11; *see also West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 U.S. Dist. LEXIS 208733, at *11 (W.D. Tex. 2019) (Chestney, J.) ("Thus, as the Court did in the *Furlow* case, the undersigned recommends reducing Mr. Sanford's hourly rate to $325, which is sufficiently above the median San Antonio rate to take into consideration his expertise in the practice area and over fifteen years of experience as applied in the context of this straightforward case.), *report and recommendation adopted*, No. SA-19-CA-556-FB, 2019 U.S. Dist. LEXIS 238552 (W.D. Tex. 2019) (Biery, J.).

Mr. Sanford states that he is "familiar with the customary and reasonable fees charged by myself and by other attorneys in the Eastern and Western Districts of Arkansas." Doc. 176-5 at ¶ 16. That opinion is irrelevant because it does not pertain to San Antonio, the relevant market in this case. Plaintiffs also cite cases outside the relevant market where Mr. Sanford was awarded various rates above the median rate and/or near $500 per hour. *See* Doc. 176 at 11–12 (citing *Sheffield v. Stewart Builders, Inc.*, No. H-19-1030, Doc. 60, p. 12 (S.D. Tex. Filed March 10, 2021). Such cases on hourly rates outside the San Antonio market are also irrelevant.

Plaintiffs also cite *Moore v. Performance Pressure Pumping Services,* wherein Western District of Texas Judge Royce C. Lamberth awarded a rate of $500 to Mr. Sanford. *See* Doc. 176 at 12 (citing *Moore v. Performance Pressure Pumping Services, LLC, and Epic Wireline Services, LLC*, No. 5:15-cv-432-RC, *consolidated with* No. 5:15-CV-346-RCL (W.D. Tex. Aug. 14, 2019), ECF No. 174, adopting ECF No. 168. But, the docket in that case indicates that the District Court allowed counsel for the defendants to withdraw for nonpayment of fees (*Moore* at ECF 142) and subsequently granted the plaintiffs a default judgment against the corporate defendants (*Id.* at ECF 167). "In *Moore*, the defendant did not oppose plaintiff's motion for fees or the rate that he claimed. Thus, Judge Lamberth granted the unopposed motion and signed the proposed order submitted with the motion. Nothing in the order indicates Judge Lamberth concluded there has been a drastic upward shift in the rates charged by labor and employment lawyers in San Antonio." *West*, 2019 U.S. Dist. LEXIS 208733, at *10. So the court's full award in *Moore* had no opposition or response from the defendants and should carry little weight.

Plaintiffs argue that attorney's fee rates have inflated over the four years since *Furlow* and that the $325 hourly rate approved in *Furlow* would be $386.28 today, based on the CPI Inflation Calculator used in *Veasey v. Abbott*, No. 2:13-CV-193, 2020 U.S. Dist. LEXIS 255611, at *41 (S.D. Tex. May 27, 2020). Doc. 176 at 13. But at least 32% of Mr. Sanford's time in this case was expended in 2017 and 2018, before *Furlow*. *Exhibit 17*. Even after *Furlow*, most of Mr. Sanford's time was billed in 2019 and 2020. *Exhibit 17*. If Mr. Sanford is entitled to any inflation of his rate over time, it would be improper for him to recover 2023 inflation-adjusted rates for work performed years earlier. At most, he would be entitled to the degree of inflation present at the time the work was performed, but Plaintiffs have not provided the Court with evidence of that calculation.

Plaintiffs also argue that *Furlow* is distinguishable because Plaintiffs' counsels' experience has increased in the interim. Doc. 176 at 14. In support, Mr. Sanford's Declaration states that he has worked on "at least 1,200 additional wage lawsuits" since *Furlow* and that, if his rate were to increase

$.10 for each of these additional wage suits, then his current rate, adjusted for inflation since *Furlow*, would be $506.28. Doc. 176-5 at ¶ 14. First, a reasonable attorney's fee rate for an attorney with Mr. Sanford's experience is based on the market, not an arbitrary premium added per case worked over time. Second, Mr. Sanford's argument of $.10 of increased value per suit on which he has worked since *Furlow* is impossible to evaluate. This Court has no means to evaluate the nature, complexity, or novelty of those unnamed suits or the degree of Mr. Sanford's involvement in them, and Mr. Sanford has provided none. Third, to the degree that Mr. Sanford is entitled to receive an additional increase in his hourly rate due to his additional experience since *Furlow*, this increase in experience occurred over the last four years. As with the purported rate inflation above, much of Mr. Sanford's time in this case was incurred before *Furlow*—when he was, presumably, less experienced. *Exhibit 17*. He is not entitled to be paid, for example, a rate for 2020 work that includes a premium for experience gained after such work and for which Plaintiffs gained no benefit.

Plaintiffs also attempt to distinguish *Furlow* and *West*, arguing that this case is "significantly more lengthy and complex." Doc. 176 at 14–15. There is no basis for increasing an attorney's fee for one case over another based simply on the length of the case. Moreover, although this case was factually complex, it was not legally complex. Taking more depositions, sifting through more discovery responses and documents, and digesting the facts for a larger number of Plaintiffs required more time, but not necessarily more legal expertise, as the issues were still relatively straightforward. Moreover, this additional time spent is already reflected in the increased number of hours expended and billed on the case, which increases the attorney's fee commensurately. To also increase the hourly rate to account for this would be double dipping.

Based on the above, Fuelco contends that $325 is a reasonable hourly rate for Mr. Sanford.

### 2.   **Vanessa Kinney**

Plaintiffs seek fees of $350 per hour for attorney Vanessa Kinney. Doc. 176 at 9. In *Furlow*,

the Sanford Law Firm also sought a rate of $350 per hour for Ms. Kinney. *Furlow* at *11. The court stated that "Ms. Kinney has been in practice for ten years [as of January 3, 2019], with a primary practice in domestic relations and contract litigation" and found that "[i]n light of the information contained in the record, the undersigned finds no reason to depart from the Rate Survey's median hourly rate of $250 for . . . Ms. Kinney." *Id.* at *12. Although most of Ms. Kinney's work was after 2019, 93% of it was completed by November 2021, and 18% was before *Furlow*, when she had less experience. *Exhibit 17*. So she would not be entitled to inflate the rate for all of her work to 2023 adjusted rates when most all of her work was performed in 2021 or earlier. Likewise, she would not be entitled to an increase in her rate for 4 years of additional experience since *Furlow*, when she performed most of her work 2 to 3 years after *Furlow* and a significant portion before *Furlow*. *See id.* Fuelco contends that a reasonable hourly rate for Ms. Kinney is $250.

### 3.   Meredith McEntire

Plaintiffs seek fees of $360 per hour for Meredith McEntire. Doc. 176 at 9. In *West*, the Western District Court found that Ms. McEntire was an associate, licensed in 2007, who worked under Mr. Sanford's supervision. *West* at *11. The Sanford Law Firm was seeking an hourly rate of $350 for her. *Id.* They seek a rate of $360 per hour in this case. Doc. 176 at 9. The court in *West* found that:

> [t]here is no indication that these associate attorneys are board-certified in labor and employment law, nor any evidence that they have any experience as lead counsel in any FLSA or other labor and employment law cases. Neither associate has enough years of experience to justify any upward departure from the Rate Report median hourly rate of $258 for attorneys of their respective experience in the San Antonio market.

*West* at *11–12 (citing Rate Report at 12) (citation to the record omitted). The court recommended that Ms. McEntire's rate be reduced to $258 per hour. *Id.* at *12. Moreover, all of Ms. McEntire's work was performed by the end of 2021, 3 years after *Furlow*. *Exhibit 17*. So she is not entitled to an increase in her rate for 4 years of inflation and additional experience after *Furlow*. A reasonable hourly rate for Ms. McEntire is $258.

### 4. **Sean Short**

Plaintiffs seek fees of $255 per hour for Sean Short. Doc. 176 at 9. In *West*, the Western District Court found that Mr. Short was a "more junior associate[]," licensed in 2015. 2019 U.S. Dist. LEXIS 208733 at *12. As Mr. Short was in practice less than 6 years at the time of the opinion (December 3, 2019), the court relied on the Rate Report for lawyers licensed between 0 and 6 years in the San Antonio area to recommend an hourly fee of $200 for Mr. Short. *Id.* (citing *Furlow* at *12; *Gill v. Bullzeye Oilfield Services, LLC d/b/a Bullzeye Wireline*, No. 5:15-CV-1166-DAE, 2018 U.S. Dist. LEXIS 171604, 2018 WL 4677902, at *5 (W.D. Tex. Jul, 19, 2018)). The vast bulk of Mr. Short's work in this case occurred between December of 2017 and June 2021, while Mr. Short had still only been practicing between 0 and 6 years. *See* Doc. 176-1 at 1–103. *Exhibit 17.* Therefore, *West* is still applicable to find that a reasonable hourly rate for Mr. Short is $200.

### B. **The Number of Hours Billed by Plaintiffs' Counsel is Unreasonable.**

The second step of calculating the lodestar is to determine the number of hours reasonably spent on the case. *Furlow* at *13.

### 1. **Time Spent on Claims that Plaintiffs Abandoned.**

Attorney time spent on claims that are unrelated to the claims on which plaintiffs prevailed are properly addressed as part of the lodestar calculation and not as a reduction to the lodestar under the *Johnson* factors. *See Williams v. Shinseki*, Civil Action No. 3:11-CV-0761-D, 2013 U.S. Dist. LEXIS 64485, at *9 (N.D. Tex. 2013). Reduction for partial success is proper when plaintiffs abandoned a claim before trial. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, No. 2-04-CV-32 (TJW), 2007 U.S. Dist. LEXIS 58944, at *8–9 (E.D. Tex. 2007).

The first two years of this case were devoted to Plaintiffs' search for a factual theory on which they could eventually base a lawsuit. In their Original Complaint, filed on December 8, 2017, the named Plaintiffs, Juan Segovia and Victor Flores, alleged that they were not paid **any** overtime, and

that was the sole FLSA violation they asserted. Doc. 1 at 4, 6–7. On February 5, 2018, Eric Rodriguez

filed a notice of consent to join as opt-in plaintiff, Doc. 4, and on May 7, 2018, Aaron Segovia did the

same, Doc. 17. These original four Plaintiffs were the first crew Fuelco ever hired to perform its frac

fueling service ("First Crew Plaintiffs"). *Exhibit A.*

In February of 2018, at the outset of this case and before significant legal expenses were

incurred, Fuelco's counsel called Plaintiffs' counsel to explain that the allegations in Plaintiffs' Original

Complaint were simply incorrect because Fuelco was paying Plaintiffs an overtime premium, as could

be verified on their paystubs—showing these Plaintiffs were paid an overtime premium for hours

worked over 40 hours (in some cases they were paid an overtime premium for 40 to 50 hours each

week). *Exhibit A.* Plaintiffs' counsel's response was telling. He explained that they just file their

lawsuits with an initial allegation that the employer is not paying overtime. *Id.* If the defendant can

show it paid overtime, then Plaintiffs' counsel just amends the allegations to an "undocumented time"

case because summary judgment motions on those issues are easily defeated. *Id.*

The gist of Plaintiffs' Original Complaint was that "Plaintiffs . . . did not receive an overtime

premium of one and one-half (1.5) times their regular rate of pay for their hours worked during weeks

in which they worked more than forty (4) hours for Defendant." Doc. 1 at ¶ 20. Fuelco promptly

moved to dismiss. Doc. 5. Thereafter, Plaintiffs moved for conditional certification. Doc. 15. In

response, Fuelco presented pay stubs directly refuting the claims in Plaintiffs' Original Complaint. See

Docs. 18-1 to 18-5. For example, Plaintiff Juan Segovia worked 98 hours during the week of May 7,

2017, through May 13, 2017, and was paid his straight-time rate of $16/hour for 40 hours and an

overtime rate of $24/hour for 58 hours. Doc. 18-2. After reviewing the record, the Court ordered

Plaintiffs to timely file an amended complaint. Doc. 23. Plaintiffs filed their First Amended Complaint

on July 27, 2018. Doc. 24. Plaintiffs made the following five main factual allegations in their First

Amended Complaint on which their unpaid overtime claims were based:

Paragraph 22:   Plaintiffs worked for Defendants in two segments of time first starting in January of 2016 and first ending in October of 2016, then returning in January of 2017 and working until August of 2017;

Paragraph 27:   Plaintiffs and other Operators received the same hourly rate ($17.00 an hour) for all hours worked for Defendant, both above and below forty (40) hours per week up to the hours they were scheduled to work, and did not receive an overtime premium of one and one-half (1.5) times their regular rate of pay for their hours worked during weeks in which they worked more than forty (40) hours for Defendant;

Paragraph 28:   Specifically, Plaintiffs received their regular rate of pay, and not an overtime premium, for all ninety (90) hours they routinely worked in a workweek, and were not paid at all for hours worked beyond ninety (90) that they worked;

Paragraph 30:   To determine Plaintiff's damages and the total amount they are claiming from the $17.00 an hour straight time pay, the remaining overtime premium owed of $8.50, an hour is multiplied by the number of overtime hours worked per week, which is then multiplied by the number of weeks worked. While the number of hours worked is a fact finding left to the Court and the dollar damages a conclusion of law left to the Court as well, Plaintiffs are owed at least $424.00 a week ($8.50 times 50 hours of overtime per week) times the number of weeks worked (70), of at least $29,750 each prior to liquidation; and

Paragraph 31:   Defendant failed to pay Plaintiffs and other Operators overtime compensation at a rate of one and one-half (1.5) times their regular rate of pay for their hours worked in excess of forty (4) hours per week even though Defendant was aware of how many hours Plaintiffs and other Operators worked.

Doc. 24. Neither Plaintiffs' Original or First Amended Complaint contained any drive/commute / standby time allegations, or a non-discretionary bonus rate of pay claim. Doc. 1 and Doc. 24.

On May 7, 2018, Plaintiffs filed their Motion for Conditional Certification. Doc. 15. Attached to that motion were the Declarations of each of the First Crew Plaintiffs. Docs. 15–1–15–4. Each Declaration contained the sworn statement that:

6. During my employment with Defendant, I was always classified as an hourly employee. I routinely worked more than forty (40) hours per week, and often more than ninety (90) hours per week.

7. I was paid bi-weekly the same hourly rate for all hours that I worked. I was not paid an overtime premium for any hours worked in excess of forty (40) hours per week.

Docs. 15-1–15-4 at ¶¶ 6–7.

In response to Plaintiffs' Motion for Conditional Certification, Fuelco presented pay stubs for each of the First Crew Plaintiffs proving that Fuelco paid each of them overtime for all hours worked over 40 hours per week. Doc. 18 at 6–7; Docs. 18-2–18-5. After an oral hearing, Judge Bemporad stated that conditional certification in FLSA cases is routinely granted, but here the Plaintiffs said they were not paid overtime, although the pay stubs showed they were paid overtime—a lot of overtime. *Exhibit A*. So instead of granting the motion, Judge Bemporad signed an Order holding the Motion for Conditional Certification in abeyance and ordering pre-certification discovery, including the depositions of the four First Crew Plaintiffs and Fuelco's corporate representative. Doc. 34.

Plaintiffs Juan Segovia, Victor Flores, and Aaron Segovia appeared for their depositions, as ordered by the Court, on October 17, 2018. But Plaintiff Eric Rodriguez failed to appear.[2] Doc. 52-9. In their depositions, Plaintiffs Juan Segovia, Victor Flores, and Aaron Segovia each testified as follows that key statements in their Declarations and in Plaintiffs' First Amended Complaint were false:

- That they were paid overtime for all hours and that the allegations in paragraph 27 of the First Amended Complaint to the contrary were false. Doc. 52-6 (J. Segovia) at 38:6–40:25; Doc. 52-7 (Flores) at 15:19–25; Doc. 52-8 (A. Segovia) at 18:21–20:15;

- That they were paid their regular rate plus overtime for working 90 or more hours and that the allegations in paragraph 28 of Plaintiffs' First Amended Complaint to the contrary were false. Doc. 52-6 (J. Segovia) at 41:1–7; Doc. 52-7 (Flores) at 31:2–6; Doc. 52-8 (A. Segovia) at 20:20–24;

- That they worked for Fuelco between 9 and 12 weeks between April and July 2017, and that the allegations in paragraph 22 of the First Amended Complaint to the contrary were false. Doc.52-6 (J. Segovia) at 35:25–37:5; Doc. 52-7 (Flores) at 28:19–29:12; Doc. 52-8 (A. Segovia) at 18:11–16; and

- That Plaintiffs each worked between 8 and 12 weeks for Fuelco, not 70 weeks, and that the allegation that each Plaintiff was entitled to $29,750[3] as alleged in paragraph 30 of the First Amended Complaint was false. Doc. 52-6 (J. Segovia) 41:8–44:12; Doc.

---

[2] Magistrate Judge Bemporad *sua sponte* sanctioned Josh Sanford ordering him to pay all of Fuelco's attorney fees and expenses associated with their failure to present Eric Rodriguez as ordered by the Court.

[3] This is the amount Plaintiffs initially demanded in the case. So, essentially, Plaintiffs testified in their depositions that the initial demand was based on allegations that were false.

52-7 (Flores) 31:7–32:22; Doc. 52-8 (A. Segovia) at 20:25–21:22.

However, six weeks after the deadline for amended pleadings and a couple of weeks before the close of discovery, to avoid the fatal effect of their testimony, head-off Fuelco's impending motion for summary judgment, and obtain a new chance at conditional certification, Plaintiffs sought leave to file their Second Amended Complaint. *See* Doc. 41. When Plaintiffs filed their Second Amended Complaint, they changed their case to be about commute time and standby time, which could not be defeated early in the case by summary judgment without depositions. Their case theory migrated from failure to pay overtime, to a case about when the workday started based on faulty theories of pre-and-post trip inspections and unrealistic trips to the yard to get tools before and after the workday.

Because the time expended on the claims alleged in Plaintiffs' Original and First Amended Complaints is not recoverable, to calculate the lodestar the Court must determine how much time Plaintiffs' counsel spent on those claims and reduce the reasonable number of hours accordingly. *Williams*, 2013 U.S. Dist. LEXIS 64485, at *15. Plaintiffs' attorneys' fee statements demonstrate that they began preparing their Second Amended Complaint, and Motion for Leave to file same, on October 19, 2018. Doc. 176-1 at 1–15; Doc. 176-2 at 1–2. As such, all billing activities before that date (totaling $56,826.50 of attorneys' fees sought) were activities spent in furtherance of claims that were ultimately abandoned. *Exhibit 1*; *Exhibit 2*. Thus, the Sanford Law Firm's hours should be reduced by 150.45 hours for time spent on claims that were abandoned by Plaintiffs' Second Amended Complaint and recover none of that time. *Exhibit 2*.

### 2.    Time Spent on Unsuccessful Claims Dismissed on Summary Judgment.

The attorneys' time should be reduced for any unproductive hours worked, such as hours spent pursuing claims that were unsuccessful. *Furlow* at *14. Time spent pursuing unsuccessful claims are non-compensable. *Id.* (citing *Walker*, 99 F.3d at 769). Under *Hensley*, the court deducts the time spent pursuing the claims for overtime that this court dismissed on summary judgment. *Hilton v. Exec.*

*Self Storage Assocs.*, No. H-06-2744, 2009 U.S. Dist. LEXIS 51417, at \*38–39 (S.D. Tex. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). Plaintiffs' main theory of the case at that time was that they performed pre-trip and post-trip inspections that would make an otherwise non-compensable commute, compensable. The Court rejected the theory and dismissed all claims that commute time is compensable, except for the employees actually driving. Doc. 158 at 45–46. The Court held that a fact issue existed as to whether actually driving the van was part of the driver's job duties (to drive the other crew members to the jobsite). *Id.* Plaintiffs' counsel unsuccessfully spent years trying to manufacture a potential fact issue related to pre-trip inspections to convert commute time to compensable work. Fuelco prevailed on this issue on summary judgment, and any claim of compensable time for commuting to/from the jobsite as a passenger in a company van as a rider was dismissed on summary judgment. Doc. 158 at 45–46.

Prior to the motions for summary judgment, Fuelco took 16 Plaintiffs' depositions. The only issues remaining at that time, and the focus of those depositions, was whether commute time and standby time were compensable work under the specific facts and circumstances for each Plaintiff. The depositions did not focus on Plaintiffs' non-discretionary bonus rate of pay claims. *Exhibit A.* This is not something that was part of any of the depositions, or other discovery in the case. *Id.* The other claim remaining in the case was the rate-of-pay claim. Because Fuelco paid all the crew members a straight time wage for commute time, Plaintiffs assert this time was a non-discretionary bonus and should have been included in the Plaintiff's rate of pay when calculating their overtime pay as non-discretionary bonuses. The Court denied Fuelco's motion for summary judgment on this issue. Doc. 158 at 45–46.

As Plaintiffs were largely, but not completely, unsuccessful in defeating Fuelco's motions for summary judgment, Plaintiffs' counsels' time spent responding to Fuelco's motions for summary judgment should be reduced by 75%, i.e., they should only recover 25% of the time spent on such

work. *See Exhibit 1; Exhibit 3*. As Plaintiffs' depositions focused only on the commute time and standby time theories (not the non-discretionary bonus claim) and Plaintiffs only defeated Fuelco's summary judgment motions on actual driving time, 90% of the deposition time was devoted to facts related to claims on which Plaintiffs were unsuccessful. So Plaintiffs' counsels' time related to those depositions should be reduced by 90%, and they should only recover 10% of such time. In total, they should only recover 31.71 hours of this time. *See Exhibit 3*.

### 3. <u>Excessive</u>

The party seeking attorney's fees is charged with the burden of showing the reasonableness of the hours billed and proving that they exercised billing judgment. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). "Billing judgment requires documentation of both the hours charged and the hours written off as unproductive, excessive, or redundant." *Id.* The remedy for a lack of billing judgment is a reduction in hours "by a percentage intended to substitute for the exercise of billing judgment." *Id.* Courts have substantially reduced attorney's fee awards for work product that was copied or derived from prior work product in similar cases. *See Davis v. Klenk*, No. 3:12-CV-115-DPM, 2012 U.S. Dist. LEXIS 163324, 2012 WL 5818158, at *2 (E.D. Ark. Nov. 15, 2012) (reducing Sanford Law Firm fees as a result of charging too many hours for essentially tailoring a form); *Jones v. RK Enterprises of Blytheville, Inc.*, 3:13-CV-00252-BRW, 2016 U.S. Dist. LEXIS 36045, 2016 WL 1091094, at *3 (E.D. Ark. Mar. 21, 2016) (same); *cf. Mark v. Sunshine Plaza, Inc.*, Civil Action No. 16-455, 2018 U.S. Dist. LEXIS 40534, 2018 WL 1282414, at *7 (E.D. La. Mar. 12, 2018) (reducing time for preparing motion for award of attorney's fees from 16.21 hours to 4 hours where attorney was highly experienced in type of case at issue).

Here, the Sanford Law Firm billed for 67.6 hours that were excessive for the following reasons:

- Discussions about "potential plaintiffs" or "potential opt-ins": these are discussions about persons who were not part of the case at that time, and there is no evidence to determine if they became Plaintiffs, so Fuelco should not be liable for those hours;

- Legal research: based on the profession of Plaintiffs' counsel's extensive experience in FLSA cases, including 1,200 additional wage lawsuits since January 3, 2019 (Doc. 176-5 at ¶ 14), counsel should not have to perform significant legal research for this case. They should have all or most of that research based on the thousands of other FLSA cases they have handled and for which they have, presumably, previously recovered their attorneys' fees. Plaintiffs' application does not indicate that it was new research or research on novel issues, and this case did not present novel issues.

- Excessive time preparing Plaintiffs' responses to discovery: Plaintiffs' objections to Fuelco's discovery requests were identical for all Plaintiffs, and their responses, when given, were substantially the same for all Plaintiffs. *See* Doc. 121 at 16–104; Doc. 121-1 at 1–180.

*Exhibit 4*. Therefore, their time on the Segovia case should be reduced by 40.85 hours (after reducing for abandoned and unsuccessful claims), as Plaintiffs' attorneys should not recover any fees for those excessive time entries. *See id.*

### 4.   **Duplicative.**

Time that is duplicative or redundant should be excluded from an award of attorney's fees. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993) (citing *Hensley*, 461 U.S. at 432–34). Hours resulting from overstaffing a case, even though actually expended, are not reasonable, and should be excluded from an award of attorney's fees. *Brown v. Sea Mar Mgmt, LLC*, No. Civ. 04-1486, 2006 U.S. Dist. LEXIS 83176, 2006 WL 3328194, at *3 (W.D. La. Nov. 15, 2006). Plaintiffs' counsel had multiple duplicative time entries where Mr. Sanford duplicated the work of associates in the areas of reviewing and editing motions and pleadings; Mr. Sanford billing to review emails that associates sent to opposing counsel, multiple attorneys billing to review the same documents; Mr. Sanford's appearance at depositions and hearings with associate attorneys with no justification for needing two attorneys, including travel time. Plaintiffs' counsel should not recover any time spent on duplicative work, which totals 26.04 hours on the Segovia case and .5 on the Hill case (after reducing both for abandoned and unsuccessful claims). *See Exhibit 1; Exhibit 5; Exhibit 15.*

### 5.   **Attorney Time Spent on Paralegal Tasks and Partner Time Spent on Associate Tasks**

Some of Plaintiffs' counsel's time were tasks performed by an attorney that could and should have been performed by a paralegal or billed at the paralegal's hourly rate of $145. This includes tasks such as communications with process servers and court reporters, preparing Consent to Join forms, reviewing signed Consents to Join, drafting Notice of Appearance, and creating spreadsheets. *See Exhibit 6*. Paralegal work performed by attorneys also included time spent reviewing and taking notes from Plaintiffs' deposition transcripts, as this case dealt with facts allegedly common to all Plaintiffs regarding vehicle inspections and standby time, which could have been performed by a paralegal. *See id*. The attorney time spent on such tasks amounted to 44.99 hours in the Segovia case and .1 in the Hill case (after reducing for abandoned and unsuccessful claims), which should be billed at the paralegal's rate of $145 per hour, instead of an attorney's rate. *Id*. Similarly, some tasks were performed by Josh Sanford that could have been performed by Sean Short or billed at his rate. That totals 1 hour in the Segovia case (after reducing for abandoned and unsuccessful claims). *See Exhibit 7*.

### 6. Attorney Time Spent on Clerical Tasks.

"Clerical work is not recoverable in an award of attorneys' fees," even where such clerical work is performed by an attorney. *Furlow* at *17 (quoting *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2014 U.S. Dist. LEXIS 97033, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014)). The filing of legal documents, the calendaring of events, and communications regarding scheduling issues, are all clerical in nature. *Lewallen v. City of Beaumont*, No. CIV.A. 1:05-CV-733TH, 2009 U.S. Dist. LEXIS 62503, 2009 WL 2175637, at *6 (E.D. Tex. July 20, 2009), *aff'd*, 394 F. App'x 38 (5th Cir. 2010) (finding that basic communications and case organization are "largely clerical or housekeeping matters and not legal work."). Entries regarding the filing of Plaintiff's complaint, civil cover sheet and summons; opening and working on a client file; and corresponding with a process server are all clerical activities that are not recoverable as attorney's fees. *West* at *14 (regarding the Sanford Law Firm). Additionally, the clerical tasks identified were performed by attorneys, as opposed to paralegals, and could have been

delegated to a non-professional and billed at a lesser rate. *Id.* (citing *Beamon v. City of Ridgeland, Miss.*, 666 F. Supp. 937, 941 (S.D. Miss. 1987).

There are many time entries included in Plaintiffs' request that appear to be clerical in nature, such as time spent "opening firm file," reviewing memos regarding client contact information, reviewing returns of service and saving them to the file, deposition scheduling, preparing cover letters to the court clerk, printing documents, conferences and regarding mailing notices. A reduction in Plaintiff's counsels' hours by 3.62 hours for this clerical work is appropriate (after reducing for abandoned and unsuccessful claims), and they should recover no fees for that time. *See Exhibit 8.*

### 7.   Travel Time Billed as Full Time.

Plaintiffs' counsel billed time for travel between his Arkansas office and San Antonio for his attendance at hearings and travel from Arkansas to Corpus Christi, Texas; Lubbock, Texas; Dallas, Texas; and Louisville, Kentucky to attend depositions. Doc. 176-1 at 14, 15, 29, 74, 75, 77, 78, 81–84, 87. When no legal work is performed during the travel, travel time is subject to substantial reduction. *See In re Babcock and Wilcox*, 526 F.3d 824, 827–28 (5th Cir. 2008) (per curiam) (discounting attorney travel time by 50%). Courts often reduce working and non-working travel time. *Geoffrion v. Nationstar Mortg. LLC*, No. 4:14-cv-350, 2016 U.S. Dist. LEXIS 62723, at *8 (E.D. Tex. 2016); s*ee In re Babcock*, 526 F.3d at 828 (noting that generally "it is not an abuse of discretion to discount non-working (and even working) travel time"); *OneBeacon Ins. Co. v. T. Wade Welch & Assoc.*, No. H-11-2061, 2015 U.S. Dist. LEXIS 115214, 2015 WL 5098552, at *7 (S.D. Tex. Aug. 31, 2015) (reducing travel time by fifty percent). Plaintiffs' counsel "did not provide any evidence that work was done during this travel and did not demonstrate that comparably skilled practitioners charge their full hourly rate for travel time." *Am. Zurich Ins. Co. v. Jasso*, 598 F. App'x 239, 250 (5th Cir. 2015).

Per Plaintiffs' billing records, 147.2 hours of Plaintiffs' counsels' billed time was spent traveling *Exhibit 9*. It is unclear from the record whether any legal work was performed during counsel's travel.

Because Plaintiffs have not shown that legal work related to this case was performed during travel, this time is subject to a substantial reduction. Some of Plaintiffs' counsel's travel time should be disallowed because it was related to work on Plaintiffs' abandoned claims as described above. Travel time that was spent on work related to Plaintiffs' unsuccessful claims should be reduced by 75% or 90% as also described above. That time and any remaining time not otherwise disallowed or previously reduced (43.65 hours) should be reduced by 50%, so that Plaintiffs' reasonable recoverable travel time is 21.83 hours. *See Exhibit 9.*

### 8. <u>Litigation Expenses</u>

As with much of Plaintiffs' counsels' time, expenses for travel and deposition costs were devoted to claims that Plaintiffs ultimately abandoned in their Second Amended Complaint, and they are not entitled to recover those expenses from Fuelco. Likewise, other expenses for travel and deposition costs were devoted to depositions regarding the claims that were the subject of Fuelco's motions for summary judgment. The depositions focused on Plaintiffs' commute time and standby time claims, on which Plaintiffs were 90% unsuccessful. So they should only recover 10% of those expenses. *See Exhibit 18.*

### 9. <u>Plaintiffs' Reasonable Lodestar</u>

Thus, after applying reasonable rates to the reasonable and recoverable number of hours on the case (492.7 hours) the lodestar for Plaintiffs' attorneys' fees should be $109,651.37. *See Exhibit 19.*

## IV. Downward Adjustment to the Lodestar—Plaintiffs' Attorneys' Fees are Disproportionate to their Monetary Success.

A court may decrease or enhance the lodestar based on the factors first set out in *Johnson. Hilton*, 2009 U.S. Dist. LEXIS 51417, at *41–42, Some of these factors are subsumed in the initial lodestar calculation and should not be counted again. *Id.* at *41; *Saizan*, 448 F.3d at 800. Plaintiffs have not used billing judgment to otherwise reduce their attorneys' fees to account for time spent on claims

on which they did not prevail. Therefore, an adjustment to the lodestar is required.

The most critical single factor in determining the reasonableness of a fee award is the degree of success obtained. *Hilton* at *41; *Saizan* at 800. "Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'" *Id.* at 801 (quoting *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998)). In evaluating an attorney's fee award under the FLSA, vindication is not as weighty of a factor as monetary success. *Saizan* at 801. Prevailing-party status is not the equivalent of success on the merits. *Id.* Although a refusal to award any fees to the plaintiffs in an FLSA would be inappropriate, the FLSA case law does show that the degree of success bears significantly on the "reasonableness" of the attorneys' fees sought, and that a substantial reduction is appropriate where, as here, the actual recovery is only a small fraction of the damages sought. *Hilton* at *42–43.

The Court reduces the award based on the proportionality of the damages award and the requested attorneys' fees. Proportionality should be considered when assessing a fee award. *Meadows v. Latshaw Drilling Co., LLC*, Civil Action No. 3:15-CV-1173-N, 2020 U.S. Dist. LEXIS 9388, at *13 (N.D. Tex. 2020) (citing *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 259 (5th Cir. 2018)). In fact, "the most critical factor in determining an attorney's fee award is the degree of success obtained." *Meadows*, 2020 U.S. Dist. LEXIS 9388 at *13 (quoting *Gurule*, 912 F.3d at 257–58). The Fifth Circuit has not created a strict proportionality requirement, and the Court should not reduce the fee award based on a low damage award alone. *Gurule* at 258–59. When measuring the degree of success, the Court can look to "the amount of damages awarded as compared to the amount sought." *Meadows* at *13 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)).

Although Fifth Circuit has noted that it is not uncommon for attorney fee awards to exceed the amount of the judgment in FLSA cases, *see Howe v. Hoffman-Curtis Partners Ltd.*, LLP, 215 F. App'x

341, 342 (5th Cir. 2007), the Fifth Circuit has also affirmed cases where the district court reduced the attorneys' fees award in part based on plaintiffs' low damages award. *Saizan* at 798. In *Saizan*, for example, the parties disputed the method that should be used to calculate damages, with the defendants urging a fluctuating work week method (which would result in liability of about $15,000) and the plaintiffs urging a method that would result in recovery of $156,000. *Id.* The district court ruled that if liability was established at trial, the fluctuating work week method would be used. *Id.* The parties settled for $20,000, and the plaintiffs sought $100,000 in attorneys' fees. *Id.* The district court awarded $13,000 in attorneys' fees because the plaintiffs had failed to prevail on the issues of the method of calculating damages and on entitlement to liquidated damages and because counsel had failed to exercise billing judgment. *Id.* at 800. The Fifth Circuit affirmed. In analyzing the plaintiffs' success on the merits, the Fifth Circuit explained that "[v]indication is not as weighty of a factor as monetary success." *Id.* at 801. "Where 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.'" *Id.* (quoting *Migis*, 135 F.3d at 1048). In affirming the reduction in attorneys' fees awarded, the Fifth Circuit considered that the settlement agreement did not contain an admission of liability and that the plaintiffs had not convinced the court that they deserved overtime compensation, that the fluctuating work week method should be used to calculate damages, or that liquidated damages were owed. *Id.* In *Hilton* at *45–46, the Southern District of Texas District Court cited to several examples of reductions to plaintiff counsel fees in FLSA cases.[4]

---

[4] *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1296 (S.D. Fla. 2008)(the court reduced the lodestar by 67% because the plaintiffs settled for a total of $ 294,140 after initially seeking more than $ 15 million in damages); *Wales v. Jack M. Berry, Inc.*, 192 F. Supp. 2d 1313, 1326 (M.D. Fla. 2001) (the court reduced the lodestar by 67% because the plaintiffs recovered less than 15% of the damages originally claimed); *Hoffman v. S. Garber, Inc.*, No. 92-C-3535, 1993 U.S. Dist. LEXIS 7515, 1993 WL 189623, at *4 (N.D. Ill. June 2, 1993) (the court reduced the lodestar by 41%, reflecting the difference between the amount sought and the result obtained. The court noted that a percentage reduction was appropriate because an award in the amount originally sought would "encourage [] overpreparation and overextension for cases that easily are pursued as a vehicle for generating fees.").

It has taken Fuelco 6 years, 20 depositions, and several summary judgment motions, to reduce Plaintiffs' case to what should have been alleged from the start. They originally sought two-times $29,750 per Plaintiff ($3.5+ million). Now, just over $43,000, and they are left with their back-up rate-of-pay claim for another $61,000. Fuelco prevailed at each step on its motions and had to deal with the Plaintiffs' subsequent theory migration.  Each time, Fuelco had no options other than to defend the case or pay exorbitant amounts that were based on non-existent pre-and-post trip inspections that Plaintiffs were not entitled to under the law. Fuelco should not be punished for defending (and largely winning each step of the way) just because some de-minimis claims for damages remained.

A reasonable reduction to the Lodestar for Plaintiffs' counsels' financial recovery in proportion to their fees is 67%. Thus, Plaintiffs' counsels' attorney fee recovery should not exceed **$36,550.46**. *See Exhibit A.*

**PRAYER**

WHEREFORE, Defendant Fuelco Energy, LLC respectfully requests that the Court deny Plaintiffs' Motion for Attorney's Fees and Costs as outlined above.

Dated:  April 6, 2023                    Respectfully submitted,


*/s/ W. Craig Stokley*
_____

**W. CRAIG STOKLEY**
State Bar No. 24051392
cstokley@cstokleypllc.com
**JAMES OWEN CREWSE**
State Bar No. 24045722
jcrewse@cstokleypllc.com
**STOKLEY PLLC**
Campbell Centre II
8150 N. Central Expressway, Suite 550
Dallas, Texas 75206
Telephone: (214) 295-2414
Facsimile: (214) 295-6411

**ATTORNEY FOR DEFENDANT**
**FUELCO ENERGY LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 6th day of April 2023, a true and correct copy of the foregoing was served to counsel of record by delivering the same to the person listed below in the manner indicated below:

**VIA ECF**
Josh Sanford
SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 411
Little Rock, Arkansas 72211

/s/ *W. Craig Stokley*
W. CRAIG STOKLEY