IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JUAN SEGOVIA and VICTOR FLORES, Each Individually and on behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FUELCO ENERGY LLC, <br><br> Defendant. | § § § § § § § § § § § § Civil Action No. 5:17-CV-1246 |

**DEFENDANT FUELCO ENERGY, LLC'S SURREPLY TO PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS**

Defendant, Fuelco Energy LLC ("Fuelco" or "Defendant"), files this Surreply to Plaintiffs' Reply in Support of Motion for Attorneys' Fees and Costs (Doc. 182) as follows:

**INTRODUCTION**

By Plaintiffs' counsel's own admission, this case got off to a "rocky start." Doc. 182 at 4. But that is because Plaintiffs' counsel did not want to initially pursue the $105,000 case they were left with on the eve of trial. Instead, they pursued, and mostly lost, the ill-advised $3,570,000 case they filed. *See* Doc. 24 ¶ 30 (seeking "at least $29,750 each prior to liquidation" which is $29,750 x 60 x 2 = $3,570,000). Plaintiffs' counsel's Reply acknowledges such damage figure is "shocking." Fuelco was also shocked by this damage figure when it was originally claimed—not only because of the high amount, but also because it was based on demonstrably false allegations that were conclusively disproved by Fuelco. Namely, Fuelco elicited testimony from the Plaintiffs themselves stating that the allegations were "false" and that their declarations on those key factual issues that drove up the damages claim—70 weeks worked with no overtime premium—were perjury.

1

What started as a $3,570,000 case, after years of successful defense, ended up as a $105,042 case on the eve of trial. FLSA cases are supposed to be about wage-and-hour claims, not about how much fees the attorneys can run up and use a *de-minimis* recovery for their clients as a hook into an exorbitant attorney's fee claim. By seeking over $400,000 in attorney fees for recovering $105,042 for their clients, the case becomes about Plaintiffs' counsel and their fees. This is an abuse of the FLSA rules that should not be tolerated.

There is nothing unreasonable about Fuelco's request—that an appropriate and reasonable fee (for the Sanford Law Firm recovering $105,042 for their clients) is $36,550.46 in attorney fees and $7,617.26 in expenses. This amount is approximately 34.7% of the recovery, which is a customary contingency fee. To award Plaintiffs' counsel nearly four-times the amount they recovered for their clients is unreasonable—especially when the record is clear that they incurred such significant fees because they pursued failed factual theories that they could have avoided had they just interviewed their clients with an eye towards the truth versus making a shocking damages figure irrespective of the facts. The Sanford Law Firm's "ready-shoot-aim" approach should not be rewarded or used to artificially and unfairly inflate the attorney's fees that are awarded here.

## ARGUMENT

### I. Hourly Rate

To support hourly rates significantly above the rates previously approved by this Court for Plaintiffs' counsel, Plaintiffs reemphasize their reliance on *Veasey v. Abbott* for the proposition that they are entitled to an increase in their hourly rate for inflation. Doc. 182 (citing No. 2:13-CV-193, 2020 U.S. Dist. LEXIS 255611, at *50 n.24 (S.D. Tex. May 27, 2020). But in *Veasey*, the non-movant cited cases approving lower rates for the movant's attorney's that were 8 years old. *Veasey*, 2020 U.S. Dist. LEXIS 255611, at *49–50 (referring to non-movant's reliance on *Balderas v. Texas*, 6:01CV158, 2002 WL 32113829, at *2 (E.D. Tex. May 21, 2002)). In contrast, this case is approximately 4 years

older than *Furlow* and approximately 3 years older than *West*, so the same need for adjustment for the passage of time is not present here.[1] Moreover, the court in *Veasey* did not rely on an "inflation-related differential" to determine the movant's attorney's hourly rate; that reference was dicta. *Veasey* at *51 n.24. It held that neither party had provided a workable rate structure for the demands of that case in that community. *Id.* at *51. It looked at each attorney's individual request, bracketed by the range of the non-movant's lower-level rate suggestion and the movant's higher rate level rates, "tempered by past awards for similar cases" and considered "the attorney's qualifications, the role of the firm or the attorney in the prosecution of the case, and the nature of the work done." *Id.* at *51–52.

Also, Plaintiffs have pled for prejudgment interest, which is designed to compensate Plaintiffs, and their attorneys, for having to wait to receive payment. To award them prejudgment interest and a current hourly rate for work performed as far back as January 2018 would be double compensation for the passage of time.

Moreover, the delay in Plaintiffs receiving payment was partly caused by Plaintiffs' counsel pursuing claims based on factual theories and allegations that Plaintiffs later admitted under oath were false. *See* Doc. 179 at 8–12. The factual theories and claims on which Plaintiffs defeated Fuelco's motion for summary judgment—time spent driving other employees, standby time spent working in the yard, and the non-discretionary bonus rate of pay claim, Doc. 158 at 45, were not alleged until Plaintiffs' Second Amended Complaint, Doc. 55. Those theories were based entirely on facts within the Plaintiffs' knowledge and were not dependent on discovery from Fuelco, so they could have been pursued from the inception of this litigation. To award Plaintiffs' attorneys a premium on their hourly rates for a delay in payment of at least one year would reward them for their delay.

---

[1] *See Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 U.S. Dist. LEXIS 59436 (W.D. Tex. January 3, 2019); *see also West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 U.S. Dist. LEXIS 208733, at *9–12 (W.D. Tex. December 3, 2019). Both cases were cited in Fuelco's Response to Plaintiffs' Motion for Attorneys' Fees and Costs. Doc. 179 at 3–8.

## II.     Number of Hours Billed

### A.     Abandoned Claims

Plaintiffs claim that their Second Amended Complaint did not abandon the claims made in their first two complaints, because the first two complaints alleged that Plaintiffs were "were improperly paid 'straight time' for **all** hours worked over forty per week . . . ," and the Second Amended Complaint alleged that "they were improperly paid straight time for **certain** overtime hours, including 'Standby' and 'Drivetime' hours." (Doc. 182 at 3 (citing Doc. 55 at ¶¶ 20–22)) (emphasis added). They argue that they did not abandon the claims in their first two complaints "but rather they narrowed this particular claim from all overtime hours to a more specific category of overtime hours." *Id.* In reality, Plaintiffs initially claimed they were paid no overtime and only amended their claims after their clients testified in deposition that that allegation and statements in their declarations were false. The Second Amended Complaint contained a new factual theory not based on any new discovery from Fuelco, as no written discovery had been served on Fuelco at that time regarding pre-commute activities or standby time, and the sole Fuelco deposition yielded little information regarding pre-commute activities or standby time. *See* Docs. 58-11, 61-4. Plaintiffs' Second Amended Complaint was a new theory and new direction for the case not previously pled, mentioned, or explored by Plaintiffs before that pleading or based on any prior work by Plaintiffs' attorneys.

When Fuelco's counsel provided Plaintiffs with examples of their pay stubs when discussing the case in its early stages, Plaintiffs had not pled, mentioned, or explored drive time or standby time to inform Fuelco's counsel that was an issue that would make those pay stubs more relevant. Moreover, each Plaintiff received copies of their paystubs from Fuelco, so at least some Plaintiffs should have had copies with drive time and/or standby time. In other words, Plaintiffs' failure to allege any claim related to such time until after three Plaintiffs signed false declarations was not due to Fuelco.

B.   **Unsuccessful Claims**

The Court's rulings on Fuelco's motions for summary judgment can be summarized as follows:

|          | **Subject of Fuelco's MSJ**                                              | **Ruling Doc. 158**                                                                                                                                                     |
|----------|--------------------------------------------------------------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| Doc. 138 | Rate of pay/non-discretionary bonus claim;<br>Commute time for employees who conducted pre-trip inspections | **Denied** as to rate of pay/non-discretionary bonus claim. Doc. 158 at 21.<br>**Granted** as to all other commute time. *Id*. at 42. |
| Doc. 139 | Commute time for employees who did not conduct pre-trip inspections      | **Granted**. *Id*.                                                                                                                                                      |
| Doc. 140 | Commute time for employees who conducted post-trip inspections           | **Denied** as to time spent transporting other employees from the jobsite;<br>**Granted** as to all other commute time. *Id*.                                           |
| Doc. 141 | Commute time for employees who did not conduct post-trip inspections     | **Granted**. *Id*.                                                                                                                                                      |
| Doc. 142 | Standby or on-call time                                                  | **Denied** (as to time spent working at the well site or yard). *Id*. at 43–44. **Plaintiffs no longer press the issue of standby time at the hotel.** *Id*. at 45.     |

Plaintiffs' entire theory of commute time being compensable due to activities performed before or after their commutes was dismissed. The only portion of commute time left was time spent driving other employees to the jobsite and back to the hotel, which, at most, was 25% of the commute time for each employee. However, prior to Fuelco's motions for summary judgment, Plaintiffs' exclusive factual basis for the compensability of commute time was their alleged pre-trip and post-trip activities, not time in the driver's seat transporting other employees to the jobsite.[2] The first time Plaintiffs asserted such basis was in their response to Fuelco's motion for summary judgment. Doc. 61 at 7.

---

[2] *See* Doc. 121-1 at 2–3, 7–8, 12–13, 17–18, 22–23, 27–28, 32–33, 37–38, 42–43, 47–48, 52–53, 57–58, 62–63, 67–68, 72–73, 77–78, 82–83, 87–88. 92–93, 97–98, 102–103, 107–108, 112–1137, 117–118, 122–123, 127–128, 132–1323, 137–138, 142–143, 147–148, 152–153, 157–158, 162–163, 167–168, 172–173–174, 177–178.

5

Plaintiffs abandoned the portion of their standby time claim related to time spent at the hotel. The portion of their standby claims that survived summary judgment was standby time spent actually working, either at Fuelco's yard or at the wellsite. Plaintiffs never quantified how many of them claimed such time in the lawsuit. Moreover, just before mediation, Plaintiffs' disclosed damages were $61,649 for their rate of pay/non-discretionary bonus claim and $43,393 for time spent driving employees to the jobsite. Doc. 179-1 at ¶ 8. They did not attribute any damages for their standby claim that survived summary judgment, so that claim must also be considered unsuccessful. So the only significant portion of their claims that remained after summary judgment was their non-discretionary bonus claim and claim for only the time Plaintiffs spent driving other employees to the jobsite or back.

It is also important to note that Plaintiffs were not wholly successful on these remaining claims. They merely managed to withstand summary judgment. Plaintiffs did obtain a recovery in settlement of the claims for their rate of pay/non-discretionary bonus and for time spent driving. But the settlement agreement did not contain an admission of liability by Fuelco or liquidated damages under 29 U.S.C. § 260 of the FLSA.

Plaintiffs claim that the depositions were about much more than just pre-and-post-trip vehicle inspections. Doc. 182 at 7. But those depositions also focused heavily on Plaintiffs' claims of other pre and post-trip activities and their standby claims—all of which Plaintiffs either lost on summary judgment or made no damage claim for. Moreover, Domonique Dixon's deposition actually spent 54 pages testifying directly on non-driving commute time and standby time. *See* Doc. 125-3 at pages 20, 34–68, 84–95, and 120–129. Moreover, Dixon's deposition was not representative of other depositions, because it covered other issues specific to him, such his abuse of Fuelco's paid time off system and resulting thousands of dollars of overpayments to him. *Id.* at pages 101–114.

Plaintiffs also claim that the depositions were also used to respond to Fuelco's Motion to Decertify. Doc. 182 at 7. However, the basis of Fuelco's motion to decertify was the differences in

6

Plaintiffs' testimony regarding pre-and-post-trip activities and standby time—claims on which Plaintiffs ultimately lost on summary judgment or abandoned any claim for damages. *See* Doc. 120. Moreover, if Plaintiffs had only alleged the one claim they maintained at mediation—the rate of pay/non-discretionary bonus claim—the depositions taken would have been largely unnecessary, and certification issues would have been much simpler.

In support of Plaintiffs' argument that they were not unsuccessful on their claims, they refer to Fuelco's first motion for summary judgment filed on December 19, 2018, which was denied. Doc. 182 at 5–6. However, Fuelco did not argue in its Response that any hours expended by Plaintiffs' counsel regarding that motion practice should be reduced.

### C. Excessive Billing, Duplicative Billing, Clerical Work, and Travel Billing

Plaintiffs claim that time for 2 attorneys to attend depositions and hearings was not duplicative. Doc. 182 at 10. But parties should reduce fees for overlapping tasks and redundant work. *Meadows v. Latshaw Drilling Co., LLC*, Civil Action No. 3:15-CV-1173-N, 2020 U.S. Dist. LEXIS 9388, at *12 (N.D. Tex. 2020) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434–35, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). When more than one attorney is involved, "the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Id.* (citing *Johnson*, 488 F.2d at 717) ("[T]he time entries show that multiple attorneys logged time for deposition preparation, document drafting, and other miscellaneous tasks that could have been performed by fewer attorneys. Thus, the Court finds this factor warrants a downward departure."). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." *Calix v. Ashton Marine LLC*, No. 14-2430, 2016 U.S. Dist. LEXIS 104111, at *9 (E.D. La. 2016) (quoting *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535 (5th Cir. 1986)). "'[H]ours spent in duplicative activity or spent in the passive role of an observer while other attorneys perform [ ]' is generally not

7

recoverable." *Coleman v. Houston Indep. Sch. Dist.*, 202 F.3d 264 [published in full-text format at 1999 U.S. App. LEXIS 39104, 1999 WL 1131554, at *6 (5th Cir. 1999) (quoting *Flowers v. Wiley*, 675 F.2d 704, 705 (5th Cir. 1982)). In their Reply, Plaintiffs make no effort to justify the need or reasonableness of having two attorneys at each deposition and hearing.

Fuelco objected to some of Plaintiffs' counsel's time entries as paralegal work performed by attorneys, and Plaintiffs argue that there is no reason why an attorney cannot review consents to join instead of a paralegal. Doc. 182 at 11. Plaintiffs' consents to join were simply a form signed by the opt-in Plaintiff. See, e.g., Doc. 1–3; Doc. 79. There was no attorney analysis needed. It was unreasonable for an attorney to charge for such a task when a paralegal could review and log the necessary information.

Plaintiffs claim that it was necessary for an attorney to review Plaintiffs' depositions and take notes to respond to Fuelco's motions for summary judgment. Doc. 182 at 11. Although it might be necessary for an attorney to review such transcripts in a different case, here, Plaintiffs' argument in response to Fuelco's Motion to Decertify was that the Plaintiffs were similarly situated because their testimony was consistent on the issues. Doc. 124 at 8–13. Therefore, a paralegal would be more than capable of reviewing those depositions for testimony regarding the same issues and similar testimony in every deposition regarding vehicle inspections, other pre-and-post-trip activities, and standby time.

Plaintiffs agreed to the reduction due to clerical time billed as attorney time. Doc. 182 at 12.

Plaintiffs argue that some of their "travel time" was actually "non-travel billing." While Fuelco does not object to the time spent at a deposition or hearing (unless otherwise objected to), many of Plaintiffs entries apparently include some actual travel time and what Plaintiffs refer to as "non-travel billing" in the same time entry. Their failure to segregate travel time from "non-travel billing"/hearing or deposition time make it impossible to determine what should be reduced and should count against them.

### III.     Downward Adjustment to the Lodestar

Plaintiffs argue that it is inappropriate to reduce their attorneys' fees for unsuccessful claims and then reduce the lodestar by a percentage based on the amount of recovery. Doc 182 at 14. The second step of calculating the lodestar is to determine the number of hours reasonably spent on the case. *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 U.S. Dist. LEXIS 59436, at *13 (W.D. Tex. 2019) (Bemporad, J.), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 59242, 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019) (Ezra, J.). Attorney time spent on claims that are unrelated to the claims on which plaintiffs prevailed are properly addressed as part of the lodestar calculation and not as a reduction to the lodestar under the *Johnson* factors. *See Williams v. Shinseki*, Civil Action No. 3:11-CV-0761-D, 2013 U.S. Dist. LEXIS 64485, at *9 (N.D. Tex. 2013). Reduction for partial success is proper when plaintiffs abandoned a claim before trial. *See O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, No. 2-04-CV-32 (TJW), 2007 U.S. Dist. LEXIS 58944, at *8–9 (E.D. Tex. 2007). Thus, it is proper to reduce the hours billed due to abandoned or unsuccessful claims during the second step of the lodestar method.

It is also appropriate to reduce the lodestar based on the degree of success. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 801 (5th Cir. 2006) (citing *Migis v. Pearle Vision*, 135 F.3d 1041, 1048 (5th Cir. 1998)). A reduction of the lodestar for lack of success is not based on Plaintiffs' losing some of their claims on summary judgment (or abandonment of different theories), it is based on monetary success. Because the basis for the reduction is different, the reductions are not double-dipping. The 67% reduction for which Fuelco argues is based, not on the Plaintiffs' abandonment of claims or lack of success on summary judgment. It is based on proportionality—the amount of Plaintiffs' recovery as compared to the attorney hours expended on the claims that Plaintiffs did not abandon or lose on summary judgment. *See* Doc. 179 at 21; Doc. 179-1 at ¶ 9.

9

However, this reduction is not based solely on the results obtained. As in *Saizan*, the settlement agreement does not contain an admission of liability by Fuelco. *See Saizan*, 448 F.3d at 801 (reducing the lodestar because "[t]settlement agreement does not contain an admission of liability. Also, Plaintiffs failed to convince the court that they deserved overtime compensation, that the fluctuating worksheet method of calculating the amount of overtime compensation did not apply, that Delta Concrete willfully violated the wage hour law, or that Delta Concrete owed liquidated damages.").

Plaintiffs note that they made a settlement demand on July 1, 2020 (more than 2 ½ years after the case was filed), for $175,998.00 in unpaid wages and $175,998.00 in liquidated damages for a total of $351,996.16 and that such demand was based, in part, on their non-discretionary bonus theory. Doc. 182 at 16–17. Plaintiffs' ultimate recovery of $105,042.00 is only 30% of that demand, which justified Fuelco's continued defense of the case. Moreover, it is 40% less than they demanded in unliquidated damages. Of course, the offer also included $150,000 in attorney fees making the total offer over $500,000.00.

Just before mediation, Plaintiffs' claimed damages were $61,649 for their rate of pay/non-discretionary bonus claim and $43,393 for time spent driving employees to the jobsite. Doc. 179-1 at ¶ 8. Plaintiffs could have demanded those amounts based on only those theories at the outset of the case with little or no discovery necessary for either side to evaluate them, and the case might have been resolved years earlier with little expense. Fuelco's defense was justified due to Plaintiffs' drive time claim being largely based on their allegation of pre-and-post-trip activities and their standby time, and they recovered nothing for either theory.

## PRAYER

WHEREFORE, Defendant Fuelco Energy, LLC respectfully requests that the Court award Plaintiffs' counsel $36,550.46 in attorney fees and $7,617.26 in expenses, and otherwise deny Plaintiffs' Motion for Attorney's Fees and Costs as outlined above.

Dated:  April 21, 2023                             Respectfully submitted,


                                                   */s/ W. Craig Stokley*
                                                   _____
                                                   **W. CRAIG STOKLEY**
                                                   State Bar No. 24051392
                                                   cstokley@cstokleypllc.com
                                                   **JAMES OWEN CREWSE**
                                                   State Bar No. 24045722
                                                   jcrewse@cstokleypllc.com
                                                   **STOKLEY PLLC**
                                                   Campbell Centre II
                                                   8150 N. Central Expressway, Suite 550
                                                   Dallas, Texas 75206
                                                   Telephone: (214) 295-2414
                                                   Facsimile: (214) 295-6411

                                                   **ATTORNEY FOR DEFENDANT**
                                                   **FUELCO ENERGY LLC**


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 21st day of April 2023, a true and correct copy of the foregoing was served to counsel of record by delivering the same to the person listed below in the manner indicated below:

**VIA ECF**
Josh Sanford
SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 411
Little Rock, Arkansas 72211


                                                   */s/ W. Craig Stokley*
                                                   W. CRAIG STOKLEY

11