## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

**JUAN SEGOVIA and VICTOR FLORES,**
**on behalf of themselves and all others**
**similarly situated,**

        *Plaintiffs*,

**v.**                                        **Case No. SA-17-CV-1246-JKP**

**FUELCO ENERGY LLC,**               **(Consolidated with**
                                   **Case No. SA-19-CV-1129-JKP)**

        *Defendant*.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is *Plaintiffs' Motion for Attorneys' Fees and Costs* (ECF No. 176) filed pursuant to 29 U.S.C. § 216(b). With Defendant's response (ECF No. 179), Plaintiffs' reply (ECF No. 182), and Defendant's court-approved surreply (ECF No. 183), the motion is ripe for ruling. The dispute here is the amount of fees and costs, not whether the Court should grant the motion. And the parties hold widely diverging views on the appropriate amount to award. For this consolidated action, Plaintiffs seek $401,584.60, representing $379,738.00 in fees and $21,846.60 in out-of-pocket costs. Defendant submits that fees of $36,550.46 and $7,617.26 in costs are reasonable for Plaintiffs' counsels' efforts in securing a $105,048 settlement in this case.

## I. FEES UNDER FAIR LABOR STANDARDS ACT

For cases brought under the Fair Labor Standards Act ("FLSA"), courts "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). When an employer has violated the FLSA, "[r]easonable attorney's fees are mandatory." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) (quoting *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979)). An award of costs is likewise mandatory. *See id.* "Although the district court has

discretion to determine what is reasonable, the court does not have discretion to decline to award attorney's fees to a prevailing party without making such a determination." *Id*.

"Plaintiffs seeking attorney's fees have the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). This burden "requires documentation of the hours charged and the hours written off as unproductive, excessive, or redundant." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 n.7 (5th Cir. 2006) (per curiam). Courts properly remedy the omission of "evidence of billing judgment," not by "a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." *Id*.

The § 216(b) requirement regarding fees includes assessing "the reasonableness of the attorneys' fees" as part of the Court's "duty to review and approve class action settlement agreements." *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 848 (5th Cir. 1998). In this case, the parties settled as to liability and damages while agreeing "to submit the issues of costs and attorneys' fees to the Court pursuant to [W.D. Tex. Civ. R.] 54." *See* Advisory of Outcome of Mediation (ECF No. 168). In response to that advisory, the Court directed the parties to file an appropriate case-closing filing, which includes a motion to approve settlement, if warranted by the circumstances of this case. *See* Order Regarding Settlement (ECF No. 169). The parties ultimately filed a joint stipulation of dismissal, *see* ECF No. 174, resulting in an Order of Dismissal, *see* ECF No. 175. In its dismissal order, the Court noted that the parties had not moved for judicial approval of the settlement and that it viewed "that as their affirmation that judicial approval is unnecessary in this case." *See id*. at 1. The Court retained "jurisdiction to enforce the terms of the settlement agreement through the resolution of the to-be-filed motion for fees and costs and for ninety days thereafter." *Id*. at 2.

Although this case does not involve approving the settlement between the parties, neither

side raises any issue with respect to the Court awarding fees under § 216(b) other than Defendant challenging the reasonableness of the fees and costs sought. In fact, both sides proceed as though § 216(b) mandates an award of fees. The Court sees no reason not to apply the § 216(b) fee provision under the facts of this case. Indeed, in discussing fees available under 42 U.S.C. § 1988, the Supreme Court has specifically recognized that federal courts may determine an appropriate reasonable fee following a settlement by the parties. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558-59 (2010) (citing *Marek v. Chesny*, 473 U.S. 1, 7 (1985)).

Courts in the Fifth Circuit use "the analysis in prevailing party cases to set FLSA fee awards." *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257 (5th Cir. 2018). This means that courts "typically cite prevailing party fee-shifting jurisprudence in FLSA cases." *Saizan*, 448 F.3d at 799 n.7. Fee "awards facilitate plaintiffs' access to the courts to vindicate their rights by providing compensation sufficient to attract competent counsel." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). Such an award "must, however, be reasonable." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Thus, when calculating attorney fees, courts use "the lodestar method – multiplying the number of hours reasonably expended by an appropriate hourly rate." *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020). Fee shifting statutes aim to enforce the applicable statute, "not to provide a form of economic relief to improve the financial lot of attorneys." *Perdue*, 559 U.S. at 552 (citation and internal quotation marks omitted). Applying "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.* The Supreme Court has described the lodestar approach as "the guiding light of [its] fee-shifting jurisprudence." *Id.* at 551 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002)).

Following such lodestar calculation, courts in the Fifth Circuit "use a twelve-factor test to determine whether counsel's performance requires an upward or downward adjustment from the lodestar." *Cruz*, 957 F.3d at 574 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) (abrogating to the extent *Johnson* stated that an award of fees is capped by the amount the client was "contractually bound to pay")). While courts may not award an enhancement "based on a factor that is subsumed in the lodestar calculation," the Supreme Court has "repeatedly said that enhancements may be awarded in rare and exceptional circumstances" and has "reject[ed] any contention that a fee determined by the lodestar method may not be enhanced in any situation." *Perdue*, 559 U.S. at 552-53 (citations and internal quotation marks omitted). Although "there is a 'strong presumption' that the lodestar figure is reasonable," the fee applicant may overcome the presumption "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id.* at 554. Three circumstances may provide a permissible basis for enhancing the lodestar amount:

> (1) "where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value;" (2) "if the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted;" and (3) "in which an attorney's performance involves exceptional delay in the payment of fees."

*Jackson v. Host Int'l, Inc.*, 426 F. App'x 215, 227 (5th Cir. 2011) (per curiam) (quoting *Perdue*, 559 U.S. at 554-56). As recognized in *Perdue*, "the burden of proving that an enhancement is necessary must be borne by the fee applicant." 559 U.S. at 553. This burden requires applicants to produce specific evidence to support the enhanced fee award. *Id.*

The twelve *Johnson* factors are: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary

fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations imposed by the client or the circumstances"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorneys"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases." 488 F.2d at 717-19 (emphasis omitted). In applying these factors, "courts must remember that they do not have a mandate . . . to make the prevailing counsel rich" and they should not implement a fee-shifting statute "in a manner to make the private attorney general's position so lucrative as to ridicule the public attorney general." *Id.* at 719. When Congress passes a fee-shifting statute, it does not do so "for the benefit of attorneys but to enable litigants to obtain competent counsel worthy of a contest with the caliber of counsel available to their opposition and to fairly place the economical burden of [the] litigation." *Id.*

## II. LODESTAR ANALYSIS

The first step in determining an appropriate fee award under the Fair Labor Standards Act is to apply the lodestar method to calculate reasonable attorneys' fees. *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020). This method has two subparts – ascertaining the time reasonably expended on the litigation and determining the appropriate hourly rate for each person for which fees are sought. *Id.*

### A. Appropriate Hourly Rate

Courts determine the appropriate hourly rate "according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Fee applicants shoulder the burden "to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895 n.11. In general, applicants establish "the reasonable hourly rate for a particular community . . . through other attorneys

practicing there." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). In the Fifth Circuit, the "relevant community" is the community in which the district court sits. *See*, *e.g.*, *id.* at 368 (defining the relevant market as "the community in which the district court sits"); *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (describing the relevant community as the "Dallas legal market").

Courts differ in defining the relevant community. *See Veasey v. Abbott*, No. 2:13-CV-193, 2020 WL 9888360 (S.D. Tex. May 27, 2020) (recognizing disparity in views), *aff'd*, 13 F.4th 362 (5th Cir. 2021) ) (only issue on appeal was whether the plaintiffs qualified as a prevailing party); *Gill v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1166-DAE, 2018 WL 4677902, at *2 n.1 (W.D. Tex. July 19, 2018) (recommendation of Mag. J.) (disagreeing with defining the relevant community as the judicial district and finding the appropriate legal market to be the city in which the litigation occurred) *adopted by* 2018 WL 4770853 (W.D. Tex. Sept. 25, 2018) (expressly agreeing "that the relevant community refers to the city in which the district court sits"); *Bear Ranch, LLC v. Heartbrand Beef, Inc.*, No. 6:12-CV-14, 2016 WL 3549483, at *5 (S.D. Tex. June 30, 2016) ("The Court considers the relevant community to be the judicial district in which the litigation occurred (the Southern District of Texas), not the particular division in which the case was pending."), *aff'd*, 885 F.3d 794 (5th Cir. 2018). Based upon *Walker*, the appropriate boundary for the relevant community appears to be the legal market of the city in which the litigation occurs. This appearance is bolstered by another case that found "the relevant legal market" to be Austin, Texas, rather than the District of Columbia in which one attorney practiced. *Hopwood v. State of Tex.*, 236 F.3d 256, 281 (5th Cir. 2000). The Fifth Circuit, however, has also indicated that a district court may properly define the relevant community as the district in which the litigation proceeds but may not do so "in the unusual cases where out-of-district counsel are proven to be necessary to secure adequate representation." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 383 (5th Cir.

2011).

In affirming the use of the relevant community standard for determining the reasonable hourly rate according to prevailing market rates, the Supreme Court explicitly recognized the inherent difficulty in "determining an appropriate 'market rate' for the services of a lawyer." *Blum*, 465 U.S. at 895 n.11. In view of that inherent difficulty, it recognized that the party seeking fees bears the burden "to justify the reasonableness of the requested rate or rates." *Id*. The applicant's burden properly encompasses showing that requested rates are reasonable within a defined community in which the district court sits. That a given rate is reasonable in one location does not make it reasonable in other locations because "the attorneys' fees calculus is a fact-intensive one and its character varies from case to case." *Hopwood*, 236 F.3d at 281. Although the proper focus is generally "on local forum rates for attorney fees," some circumstances warrant using a non-local rate "as the starting point for calculating the lodestar amount." *McClain*, 649 F.3d at 382. Further, "[b]ecause local rates may well reflect a lower cost of living in the forum, which will also be indicative of lower potential damage awards, the district court retains discretion to adjust the lodestar and achieve an overall reasonable fee award." *Id*.

The preceding paragraph highlights the discretion of the courts in determining the reasonable rate and, if necessary, defining the relevant community. In some circumstances, courts may agree that a local community rate is too restrictive and thus may exercise their discretion to expand the relevant community. In other circumstances, courts may view the proposed relevant community as too broad and may therefore exercise their discretion to restrict the definition of the relevant community. The Supreme Court did not intend the task of defining the relevant community to be reduced to scientific precision. The determination of the relevant community begins with the fee applicant's burden as supplemented by a healthy dose of judicial discretion enlightened by each court's expertise in setting fee rates and deciding the boundaries of the relevant community.

Through their experience, courts understand that the relevant community may differ depending on the circumstances.

With that said, this Court agrees that in the vast majority of cases, the City of San Antonio is the typical focal point for fee rates for cases litigated in the San Antonio federal court. This focal point does not mean that the Court may not consider suburban areas of San Antonio within its rate determination. Nor does it preclude a district court from expanding the relevant community from a city's legal market to the entirety of the division or to the Western District itself when circumstances warrant. Although a court's discretion in determining the reasonableness of a fee rate is restricted to a relevant legal community, courts do not abuse that discretion when the awarded hourly fee is supported by the record, even if a court goes beyond the local city community.

While it may be uncommon for a given case to provide a reason to consider the relevant legal community to be the San Antonio Division of the Western District of Texas, which encompasses fourteen counties, *see* 28 U.S.C. § 124(d)(4), or to expand it even more broadly to the entirety of the Western District of Texas, which encompasses seven diverse divisions, *see id*. § 124(d)(1)-(7), a court's discretion is not circumscribed by the arbitrary boundary of the city in which it sits. This Court finds no need to limit the relevant community to a particular city for all cases even though it fully recognizes that the City of San Antonio provides the generally accepted relevant legal community for litigation here. Defining the relevant community is only constrained by the broad discretion of the district court based upon the record presented to it.

This Court agrees that "it is a matter for the court, using its expertise and considering the totality of the circumstances, to determine whether evidence of fees in a different division are probative of fees in the division [(or city)] where the action is pending." *See Veasey*, 2020 WL 9888360, at *9. The Fifth Circuit has long recognized that federal judges are themselves experts in assessing matters of attorney fees. *See Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d

865, 868 (5th Cir. 1976). Fee rates naturally vary within the confines of a given community, whether that community is defined as the city, division, or district in which the litigation proceeds. A reasonable rate lies on a spectrum taking into consideration all relevant factors. But, of course, "[t]he hourly fee awarded must be supported by the record; the district court may not simply rely on its own experience in the relevant legal market to set a reasonable hourly billing rate." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234 (5th Cir. 1997); *accord McClain*, 649 F.3d at 383.

Plaintiffs have supported their fee motion by the affidavit of Josh Sanford ("Sanford"). *See* ECF No. 176-5. In 2001, Sanford formed Sanford Law Firm ("SLF") which predominately practices in Arkansas with a busy Western District of Texas practice. He avers that that he is "familiar with the customary and reasonable fees charged by [him] and by other attorneys in the Eastern and Western Districts of Arkansas" and, in general, "the customary and reasonable fee charged for federal court work by local attorneys in U.S. District Courts in Arkansas is $150 to $350 per hour, depending upon experience and specialty," with national practitioners charging $400 to $450. *Id*. ¶ 16. He avers that "rates charged by Sanford Law Firm's attorneys are reasonable." *Id*. ¶ 17.

Based on *Walker* and other Fifth Circuit precedent, rates for Arkansas do not set the appropriate rate for the relevant community in this case. Plaintiffs present no evidence that they had to turn to an out-of-state firm so that they could obtain competent attorneys for this FLSA case in San Antonio. Consequently, using an out-of-state rate is not warranted under *McClain* to increase the local market rate of San Antonio. Nevertheless, "[w]hen the attorney's customary hourly rate is within the range of hourly fees in the prevailing market, that rate should be considered in setting a reasonable hourly rate." *LULAC*, 119 F.3d at 1234. Thus, rates for attorneys from outside the relevant community are not completely irrelevant to the fee calculation. If the rates normally charged by the four SLF attorneys lie within the relevant range for this case, then the Court will

consider that in determining the appropriate hourly rates for the attorneys.

Sanford further avers that he is "aware of the customary rates for attorneys of various skill levels who focus their practice in the area of labor and employment in the Western District of Texas, and the hourly rates charged by Sanford Law Firm attorneys are in line with those rates." ECF No. 176-5 ¶ 23. In setting requested rates, Sanford "relied on national and local surveys, as well as rates previously awarded by courts within the Fifth Circuit, particularly the Western District of Texas, to [him] and other [SLF] attorneys." *Id*.

In this case, SLF took the "case on a contingency basis and paid all out-of-pocket expenses . . . without any assurances that fees or costs would be recovered." *Id*. ¶ 24. This contingency fee arrangement relied on the fee-shifting provisions of the FLSA rather than a percentage of any recovery by the plaintiffs. *Id*. With requested rates in parenthesis, Plaintiffs seek fees for four attorneys: (1) founder and managing partner, Josh Sanford ($500); 2007 law school graduate and attorney, Vanessa Kinney ($350); 2007 law school graduate and attorney, Meredith McEntire ($360); and 2013 law school graduate and attorney, Sean Short ($255). *Id*. ¶¶ 18-19. They also seek fees for support staff – $110 rate for a law clerk and $145 rate for a paralegal. *Id*. ¶ 18. Sanford avers: "Based on my experience and knowledge, it is my opinion that these hourly rates are reasonable given the attorneys' skills, expertise, and reputations, and they are within the range of rates awarded to attorneys with similar backgrounds and experience." *Id*. ¶ 28.

Plaintiffs contend that the requested rates are reasonable and, for the most part, are below the national average for complex litigation. ECF No. 176 at 9. The national average is irrelevant to whether the requested fee is reasonable in the relevant community, whether the Court defines that community as San Antonio, the San Antonio Division of the Western District of Texas, or the Western District itself. Plaintiffs further contend that "[t]here is simply no group of attorneys within 600 miles of Little Rock who have experience comparable to SLF in wage litigation." *Id*.

at 11 (citing ECF No. 176-5 ¶ 19). That contention is also irrelevant to determining the proper rate in the relevant community here.

Defendant challenges the rates sought for the four attorneys and submit that reasonable rates would be $325 for Sanford, $250 for Kinney, $258 for McEntire, and $200 for Short. It does not challenge the rates for any other timekeeper. When an opposing party does not challenge an hourly rate, courts may accept a proffered rate as reasonable based upon an affidavit or declaration of an attorney seeking fees. *See Tollett*, 285 F.3d at 369 (accepting rate as reasonable based on an affidavit from counsel but "only because the [opposing side] has not contested it"). The Court will thus accept $110 rate for law clerk work and a $145 rate for paralegal work as submitted. *See* ECF No. 175-5 ¶ 18.

Plaintiffs do not support the requested attorney rates through affidavits of other San Antonio attorneys. They instead rely on a past fee award in Houston, which is irrelevant, and an award in San Antonio, which at least concerns the relevant community. The latter fee award, however, followed entry of default judgment in the amount of $2,126,413.22. *See Moore v. Performance Pressure Pumping Services, LLC*, No. 5:15-cv-432-RC, unpub. ord. (W.D. Tex. Mar. 29, 2019) (order granting default judgment (ECF No. 167)). The Court granted an uncontested motion for fees and awarded the amounts requested (fees of $173,356.50 and costs of $12,832.75) as reasonable. *See id.* unpub. ord. (W.D. Tex. Aug. 14, 2019) (order (ECF No. 174) granting fee motion (ECF No. 168)). Given the circumstances of that case, the Court accords it little persuasive value in the context of this highly contested motion for fees. *See Baulch v. Johns*, 70 F.3d 813, 818 n.8 (5th Cir. 1995) (recognizing that a fee awarded in a case "not subject to adversarial testing" may not represent a reasonable fee in other cases in the same geographical area).

Plaintiffs also recognize that their attorneys were awarded lower rates in two other cases in San Antonio. *See* ECF No. 176 at 12 (citing *West v. Zedric's LLC*, No. SA-19-CV-00556-FB,

2019 WL 6522828 (W.D. Tex. Dec. 3, 2019) (recommendation of Mag. J.) *accepted by* 2019 WL 12393458 (W.D. Tex. Dec. 27, 2019); *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470 (W.D. Tex. Jan. 3, 2019) (recommendation of Mag. J.) *adopted by* 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019)). But as Plaintiffs point out, both cases relied on a State Bar of Texas Department of Research & Analysis 2015 Hourly Fact Sheet (hereinafter "Rate Report" or "Fact Sheet") that has come under growing criticism in the intervening years. *See id.* (citing *Miniex v. Houston Hous. Auth.*, No. 4:17-0624, 2019 WL 4920646 (S.D. Tex. Sept. 13, 2019); *Veasey*, 2020 WL 9888360). A more recent case out of San Antonio likewise criticizes reliance on the Rate Report. *See Pittman v. Sw. Bell Tel. LP*, No. SA-20-CA-01262-XR, 2022 WL 20508220, at *9 & n.3 (W.D. Tex. Aug. 16, 2022) (distinguishing *Furlow* on that basis).

Although the Fifth Circuit has recognized "the Fact Sheet's probative limitations," it ultimately left it within the court's discretion as to whether to consider the Fact Sheet as "a useful 'baseline' for calculating a reasonable hourly rate." *Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *5 (5th Cir. Mar. 18, 2022) (per curiam). In fact, this Court has used the Fact Sheet as a "guide for determination of applicable reasonable rates for attorneys in the San Antonio area who practice litigation in these FLSA cases" when the party seeking fees did "not provide affidavits from other attorneys in the San Antonio community to assess the current rates for attorneys in this type of litigation." *Richards v. AT&T Servs., Inc.*, No. SA-20-CV-00685-JKP, 2022 WL 2307472, at *3 (W.D. Tex. June 27, 2022). Furthermore, the Fifth Circuit has recently held use of the Fact Sheet "was not clearly erroneous" in determining the reasonable hourly rate. *Transverse, LLC v. Iowa Wireless Servs., LLC*, No. 22-50254, 2023 WL 4056498, at *3 (5th Cir. June 19, 2023) (per curiam).

Still, even the Texas Bar "warns against using the Fact Sheet to set attorney fees." *Diocesan Migrant & Refugee Servs., Inc. v. U.S. Immigr. & Customs Enf't*, No. EP-19-CV-00236-FM, 2021

WL 289548, at *12 (W.D. Tex. Jan. 28, 2021). When a party seeking fees provides a reliable basis for setting the appropriate hourly rate, this Court does not find reliance on the Fact Sheet persuasive in light of the significant concerns regarding the Fact Sheet noted in various cases. *See McConnell v. Sw. Bell Tel. LP*, No. 3:20-CV-1457-X, 2023 WL 1478494, at *4 (N.D. Tex. Feb. 2, 2023). Some parties also rely on a second survey "from the Texas State Bar called '2019 Income and Hourly Rates." *See id*. But at this point in time, this Court agrees that this survey is also unpersuasive when the Court has another basis for setting an appropriate hourly rate. *See id*.

Plaintiffs have limited the resources to be considered in this case by not submitting affidavits of other practicing attorneys. They essentially rely on rates allowed in one case (*Moore*) while asserting that rates allowed in *West* and *Furlow* are too low.[1] The Court has found the *Moore* case unpersuasive because of the uncontested nature of the motion for fees filed in a default judgment case. In that case, the Court accepted hourly rates of $500 for Sanford, $350 for Kinney, $300 for McEntire, and $225 for Short as appropriate. *See Moore*, No. 5:15-cv-432-RC, unpub. ord. (W.D. Tex. Aug. 14, 2019) (order  (ECF No. 174) granting fee motion (ECF No. 168)). Plaintiffs also sought similar rates in *West* and *Furlow*, but the Court found lower rates reasonable after considering various factors. *West*, 2019 WL 6522828, at *3-4; *Furlow*, 2019 WL 1313470, at *3-6.

It is ultimately Plaintiffs' burden to show an appropriate hourly rate to use in the lodestar calculation. They have not shown why the Court should follow *Moore* given the different circumstances of that case. While they have shown reasons for questioning the bases for the rates used in *West* and *Furlow*, the Fifth Circuit continues to accept use of the Fact Sheet as a guide. Naturally, when using historical rates as a guide, courts may make "an appropriate adjustment for delay in

---

[1] Plaintiffs do rely on a number of cases litigated in San Antonio that approved various fee rates. *See* ECF No. 176 at 15 & n.17. Although they identify one case as arising under the FLSA, they make no meaningful effort to compare the experience and credentials of their attorneys with the attorneys litigating any of those other cases. For Plaintiffs to carry their burden, they must do more than simply list various other cases with approved rates. In this case, moreover, the most apt comparisons for Plaintiffs' counsel are the cases in which the attorneys successfully litigated previously in San Antonio. Plaintiffs present no reason why these prior cases do not present a proper starting point.

payment – whether by the application of current rather than historic rates or otherwise." *Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 284 (1989). And, when utilizing median rates from a rate survey as a starting point, courts also consider "whether the requested rates should be adjusted based upon various factors, including the size of the billing attorney's firm, the nature of the litigation, and the billing attorney's specific credentials." *Furlow*, 2019 WL 1313470, at *3. Another relevant factor would be the time that has passed since the rate survey.

In January 2019, this Court noted: "Neither the size of Mr. Sanford's firm, nor the nature of the litigation, nor Mr. Sanford's specific credentials justify a $500 per hour rate." *Id*. at *4. As to firm size, the Court noted that, while "counsel's firm is not particularly small, it is not large enough to justify the type of upward adjustment that a large law firm may demand from its clients." *Id*. Sanford's "extensive experience in these types of cases warrant[ed] an upward adjustment from the $258 average hourly rate." *Id*. at *5. At that time, Sanford had "been licensed for 17 years and [wa]s not board-certified." *Id*. at *5 n.5. The Court found a reasonable rate for Sanford to be $325. *Id*. at *5. At that time, Kinney had "been in practice for ten years, with a primary practice in domestic relations and contract litigation." *Id*. Nothing indicated that she was "board certified in labor and employment law." *Id*. The Court thus declined to depart from the median rate of $250 for her. *Id*.

In December 2019, this Court considered another $500 rate request by Sanford, and again found $325 reasonable. *West*, 2019 WL 6522828, at *3-4. In doing so, it recognized the intervening *Moore* fee award, but found nothing in *Moore* to conclude that "there has been a drastic upward shift in the rates charged by labor and employment lawyers in San Antonio." *Id*. at *4. For McEntire who was licensed in 2007, the Court found no indication that she was "board-certified in labor and employment law, nor any evidence that [she had] any experience as lead counsel in any FLSA or other labor and employment law cases." *Id*. It thus chose not to depart from the median rate of

14

$258 for her. *Id*. For Short – a "more junior associate" licensed in 2015 – the Court found $200 reasonable. *Id*.

Of course, multiple years have passed since the Court found those fee rates reasonable. Previously, Short had been in legal practice for just four years. Since 2016, he "has focused almost exclusively on wage and hour litigation." ECF No. 176-5 ¶ 19a. McEntire and Kinney have now both been in practice for at least fifteen years. *Id*. ¶¶ 19b-c. During her time with SLF, McEntire has "focused her practice on wage-and-hour litigation." *Id*. ¶ 19b. Kinney has served as both lead and co-counsel at trial "and currently focuses primarily on briefing issues in FLSA cases." *Id*. ¶ 19c. But other than the additional experience provided by the intervening years, Plaintiffs do not report much else in way of change. *See*, *generally*, *id*. They do report a 2020 recognition in a blog utilizing legal analytics to showcase top attorneys and their firms. *See id*. ¶ 6. But other than total-ing the number of cases of individual attorneys and their firms, neither Sanford's declaration nor the website provides much basis to attribute real meaning to the recognition.

As for specific factors to consider when using a median rate from a survey, nothing has materially changed as to the size of SLF, and the nature of the litigation remains FLSA-based. As mentioned in a prior order, this case involved fifty-eight plaintiffs. *See Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *11 (W.D. Tex. May 28, 2021) (denying motion to decertify collective action). The Court recognized that an "FLSA collective action" may be complex and for complex cases, the courts must develop a trial plan. *Id*. at *12. The Court thus developed a plan that permitted Defendant to purse multiple motions for summary judgment. *See id*. Defendant filed five motions for summary judgment – four related to the four subclasses of plaintiffs and one related to "Plaintiffs' claims for standby or on-call time." *Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2022 WL 4545756, at *3 (W.D. Tex. Sept. 28, 2022) (order ruling on five summary judgment motions). Nevertheless, while this litigation was more

complex factually and logistically based upon the number of Plaintiffs and the theories of recovery, such additional complexities factor more into time expended rather than the fee rate. The primary change since 2019 is that the attorneys have increased experience, which may justify a higher rate than then.

Plaintiffs argue that, even if the Court uses the Rate Report as a starting point as was done in *West* and *Furlow*, the rates found reasonable in those cases remain subject to increase as a natural consequence of the passing of time. ECF No. 176 at 13. They contend that, using the inflation calculator used in *Veasey*, the January 2019 rates for Sanford and Kinney would increase to approximately $386 and $298 respectively, while the December 2019 rates for McEntire and Short would increase to approximately $300 and $233 respectively. *See id*. at 14. Plaintiffs conveniently forget that the Court found $325 to be a reasonable rate for Sanford in both January and December 2019. It therefore seems that any increase would be calculated from December 2019, as Plaintiffs did for McEntire and Short.

Defendant counters that an increase for inflation ignores that counsel for Plaintiffs expended about a third of their time on this case in 2017 and 2018 before this Court issued the *Furlow* award. *See* ECF No. 179 at 5. As noted earlier, however, a delay in compensation justifies using a current fee rate or otherwise increasing the fee award to appropriately compensate for the delay.

But that does not mean that a court will simply increase a prior rate according to an inflation calculator. It is not that simple to determine an appropriate fee rate for the services of an attorney. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). Many factors affect the rate of attorney fees in a given location. As recognized in *Blum*, attorney services differ from "prices of commodities and most services," which "are determined by supply and demand." *Id*. Given such differences, courts should be appropriately cautious in relying on the CPI Inflation Calculator suggested by Plaintiffs. The data used by the calculator "represents changes in the prices of all goods and

16

services purchased for consumption by urban households." *See* U.S. Bureau of Labor Statistics, "CPI Inflation Calculator," https://www.bls.gov/data/inflation_calculator.htm (last visited Mar. 13, 2024). While rates may increase due to inflation, Plaintiffs present no basis for finding such increases proceed in accordance with an inflation calculator. Plaintiffs must show that such new rate is reasonable in the relevant community.

Based simply on the passage of time and increased experience of the attorneys since 2019, some increase to the previously awarded rates is warranted. But Plaintiffs have presented nothing to justify a $500 rate for Sanford or rates exceeding $300 for the more senior associates (McEntire and Kinney).

Considering all matters of record, the Court finds the following fee rates reasonable: $350 for Sanford, $300 for Kinney (in part because she has experience as a lead counsel in addition to her fifteen years of practicing), $275 for McEntire, and $255 for Short. These rates reflect their increased experience and the passing of time since 2019, while also recognizing the rates requested for each of them as well as rates previously awarded in San Antonio. The Court finds these rates commensurate with those charged in San Antonio for attorneys of comparable skills and experience.

The rates also lie within the customary and reasonable fee range charged in the SLF's primary location in Arkansas. Although Plaintiffs did not set out the specific Arkansas rate normally charged by each attorney, they did present a rate range for the Court's consideration. And while there is no basis to increase the rate charged in the relevant community – in this instance, San Antonio – the Court may consider non-local rates when they fall within the range of reasonable fees charged in the relevant community. The requested rates for Sanford and the more senior associates greatly exceed what the Court previously found as reasonable, and they exceed the rates typically charged in Arkansas. This case presents no reason to expand the relevant legal

community to the San Antonio Division or to the Western District of Texas in general.

**B. Hours Reasonably Expended**

In calculating the lodestar amount, courts next determine how many hours the prevailing party reasonably expended on the litigation. At this juncture, " "[t]he court should exclude all time that is excessive, duplicative, or inadequately documented." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 392 (5th Cir. 2016) (citation and internal quotation marks omitted). "And in doing so, the Court may make line-item cuts or use a simple across-the-board reduction by a certain percentage as an alternative to line-by-line reductions, particularly when fee documentation is voluminous." *Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2016 WL 7178967, at *4 (N.D. Tex. Dec. 8, 2016) (citations and internal quotation marks omitted). Determining precisely when a case is worthy of an across-the-board reduction is unnecessary in this case. This case qualifies regardless of where that line properly lies. When "fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994).

Because this action involves two consolidated cases, Plaintiffs provide two spreadsheets to reflect hours reasonably expended in this consolidated action. *See* ECF Nos. 176-1 and 176-2. The 3,976 entries of ECF No. 176-1 reflect expended time of 1,088.30 hours. An additional 247entries in ECF No. 176-2 reflect an additional 21.30 hours. Plaintiffs submit that counsel reduced time claimed "in a good-faith effort to exclude potentially excessive, redundant, or otherwise unnecessary hours, and simply to make billing more reasonable." ECF No. 176 at 6. The exercise of this billing judgment reduced requested fees by $79,101.50. *Id*. at 8.

Defendant converted Plaintiffs' spreadsheets (ECF Nos. 176-1 and 176-2) to a more usable form and provided additional information while leaving Plaintiffs' data intact. *See* ECF No. 179-1 ¶ 11; ECF No. 179-2 (Segovia case); ECF No. 179-16 (Hill case). With their additional

information, the Court finds these exhibits more useful than Plaintiffs' exhibits alone. Plaintiffs, moreover, lodge no objection to Defendant's exhibits. Because the Court is "faced with a massive fee application," it need not conduct a line-by-line review; instead, it may make an across-the-board reduction. *Loranger*, 10 F.3d at 783.

Both sides would agree that this case has been vigorously litigated at all phases since its filing in December 2017. In their original complaint, Plaintiffs raised an individual and collective action claim for the failure of Defendant to pay overtime for hours worked in excess of forty per week. *See* ECF No. 1 ¶¶ 35-46. That pleading prompted a motion to dismiss (ECF No. 5), which led the Court to order Plaintiffs to amend their complaint, as "it [wa]s not at all clear that the defects Defendant purports to identify are incurable, and Plaintiffs ha[d] advised the Court of their willingness to amend their complaint to attempt to meet Defendant's objections." *See* ECF No. 24 at 2. The Court ultimately found the motion to dismiss moot. *See* ECF No. 32.

Plaintiffs' amended complaint asserted the same individual and collective action claim for overtime pay as asserted in the original complaint. *Compare* ECF No. 1 ¶¶ 35-46 *with* ECF No. 24 ¶¶ 35-46. The amended complaint also prompted a motion to dismiss (ECF No. 28). Before the Court ruled on the motion to dismiss, Plaintiffs filed a motion for leave to amend (ECF No. 41) and Defendant moved for summary judgment (ECF No. 51). The Court thereafter granted Plaintiffs leave to file a second amended complaint and granted Defendant leave to file an amended motion for summary judgment. *See* ECF No. 54.

In their second amended complaint, Plaintiffs asserted a similar individual, "straight time" claim for certain overtime hours, including Standby and Drivetime hours. *See* ECF No. 55 ¶¶ 50-55. They also asserted an individual regular rate claim, *id*. ¶¶ 56-61, in addition to a collective action claim, *id*. ¶¶ 62-70. Defendant again filed a motion for summary judgment. *See* ECF No. 58. These filings prompted the Court to moot the second motion to dismiss and the original motion

for summary judgment. *See* ECF Nos. 60 and 63.

Defendant was partially successful with its second summary judgment motion. *See* ECF No. 69 (accepting recommendation that summary judgment be granted as to whether "Standby" payments be included in determining Plaintiffs' regular rate of pay, and otherwise denying summary judgment without prejudice). The Court later noted that, based on this summary judgment ruling, "standby time is no longer an issue to the extent that it relates to Plaintiffs' regular rate claim." *See Segovia v. Fuelco Energy LLC*, No. SA-17-CV-1246-JKP, 2022 WL 4545756, at *3 (W.D. Tex. Sept. 28, 2022) (found on the docket as ECF No. 158 at 5).

Subsequently, the Court denied a hotly contested motion to decertify collective action and set various deadlines, including one for identifying appropriate subclasses of plaintiffs. *See* ECF No. 129. With input from the parties, the Court established four subclasses for Plaintiffs' drivetime claims, permitted a summary judgment motion for each subclass, and permitted a fifth summary judgment motion for standby claims. *See* ECF No. 132. Defendant subsequently filed five summary judgment motions. *See* ECF Nos. 138 through 142.

The Court summarized the five motions as seeking (1) dismissal of rate of pay claims and a portion of Plaintiffs' claim for time spent commuting to the jobsite by employees who had conducted pre-trip inspections; (2) dismissal of the commuting claim relative to employes who did not conduct pre-trip inspections; (3) dismissal of that same claim relative to employees who conducted post-trip inspections; (4) dismissal of that claim relative to employees who did not conduct post-trip inspections; and (5) dismissal of claims for standby or on-call time. *See Segovia*, 2022 WL 4545756, at *1. The Court partially granted each of the first four motions but denied the fifth one entirely. *See id*.

In summarizing its findings as to the various subclasses, the Court found that Defendant was "not entitled to summary judgment as to any claim for drive time – as defined as time actually

spent driving." *Id.* at *23. Not only was such time compensable under "the summary judgment evidence viewed in the light most favorable to Plaintiffs," but "this apparently compensable time also proceed[ed] as a non-discretionary-bonus claim alternative to compensability." *Id*. Because the Court found riding time "not compensable," such claim "only proceed[ed] to trial as a standalone claim based on non-discretionary bonuses." *Id*. The Court also found that "time spent performing pre- or post-trip inspections or other activities d[id] not proceed to trial at all." *Id*. Plaintiffs' standby claim also survived summary judgment. *Id*. at *24.

While Defendant was partially unsuccessful on the motions concerning Plaintiffs' commuting claim, the Court did agree that "riding time is not compensable other than perhaps as a non-discretionary bonus and (2) pre- and post-trip inspections or other activities are not compensable." *See id.* at *25. With respect to the beginning and ending of the workday for Plaintiffs, the Court found that "[f]or morning drivers, the workday commenced with the drive" and, "for evening drivers, the workday ended with the arrival back at the hotel." *Id*. at *23. Mere riders did not have their workday extended for the commute to or from work. *Id*. Defendant's summary judgment victories are not insignificant.

### 1. Abandonment and Dismissal of Claims

Based on such victories and Plaintiffs' early pleadings that ultimately required amendment, Defendant argues that many claimed hours are not recoverable because they relate to claims that were abandoned through amendment or dismissed. ECF No. 179 at 2. It argues that neither Plaintiffs' original nor first amended complaints "contained any drive/commute/standby time allegations, or a non-discretionary bonus rate of pay claim." *Id*. at 10. Plaintiffs, of course, disagree with the scope of Defendant's success and the proposition that they abandoned any claims through amendment. ECF No. 182 at 2-8. They submit that "if the Court must make some deduction for 'unsuccessful' claims, then the Court should make no more than a 20% cut to the 'Summary

Judgment' category of work." *Id*. at 8.

Attorneys are not to be compensated for time spent pursuing unsuccessful claims or those that they chose not to pursue. *Walker v. U.S. Dept. of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). These matters are not a matter of billing judgment; instead, litigants have no right to bill for such issues. *See id*. Courts should reduce requested attorney fees "for any unproductive hours worked, such as hours that resulted in work product that was never filed or served, and for hours spent pursuing claims that were unsuccessful." *Furlow v. Bullseye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *6 (W.D. Tex. Jan. 3, 2019) (recommendation of Mag. J.) *adopted by* 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019)).

Plaintiffs ultimately successfully obtained leave of court to present a second amended complaint so as to partially overcome an early summary judgment motion. The Court does not view any amendment as abandoning any claim per se. The first amended complaint asserted the same claims as the original complaint. As Plaintiffs contend, the second amended pleading narrowed the focus of the broadly stated original claims. While a need to file amended pleadings may indicate unproductive work hours, numerous reasons may prompt a need for amendment, not all of which point to earlier unproductive work hours.

Even though Plaintiffs filed and served the pre-amended pleadings, the pleadings were mostly unutilized other than to prompt dispositive filings by the Defendant and to provide a basis for amendment for Plaintiffs. The first amendment came early in the case and there is no indication that added facts could not have been included in the original complaint. As for the second amended pleading, Plaintiffs' stated purpose for the amendment was "to correct misstated allegations and to propose an alternate theory of liability in light of the deposition testimony of Defendant." ECF No. 41 at 1. While a need to amend a pleading to avoid dismissal through a motion to dismiss exhibits deficient work in filing the prior pleading, which on some level conveys unproductivity,

especially when filed by attorneys who hold themselves out as experts in FLSA actions, one cannot expect attorneys to have all available information prior to discovery. Moreover, an amended pleading does not render non-compensable all hours billed for time expended prior to the amendment. That simply goes too far. Nevertheless, in appropriate circumstances, a time reduction may be warranted for unproductive hours worked.

Defendant next argues for a time reduction for claims that were not successful. It was partially successful on its second summary judgment motion. And it successfully obtained dismissal of some aspects of the second amended complaint through its later motions for summary judgment. But it did not obtain a complete dismissal of any claim per se. The second amended complaint's claim based on standby time survived completely. Regardless, the later motions reduced the scope of Plaintiffs' commute time claim extensively. Prior to the round of five summary judgment motions, the commute time claim stemmed from several activities that might commence the workday prior to the commute and would end the workday after the employees returned to the hotel. The partial grant of summary judgment found pre- and post-trip inspections or other activities not compensable—the only activity that potentially extended the normal workday for Plaintiffs was driving the company vehicle to the worksite or driving it back to the hotel. Thus, instead of each Plaintiff going to trial with a workday potentially commencing with a pre-trip inspection or other activities, only the morning driver would have the workday commence prior to the commute to the worksite. Similarly, instead of each Plaintiff going to trial with a workday potentially ending with a post-trip inspection or other activities, only the evening driver would have the workday extended to include the commute back to the hotel.

Even though the standby and regular rate claims survived, reducing Plaintiffs' claimed time based on Defendant's partial success on summary judgment is warranted. Given the interrelationships between Plaintiffs' claims, it is not a simple matter to quantify or identify specific hours to

reduce or eliminate. As discussed by the Supreme Court in the context of adjusting the lodestar

amount either upward or downward:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). After considering other matters, the Court will

return to whether Plaintiffs' level of success on their claims warrants a reduction in hours expended.

### 2. <u>Other Matters</u>

Defendant next identifies requested time as excessive or duplicative, as well as time improperly billed for clerical or paralegal tasks or for partner time spent on associate tasks. ECF No.

179 at 14-17. It also seeks a reduction for travel time. *Id*. at 17-18.

Courts may reduce claimed hours that are deemed excessive, duplicative, or redundant.

*Furlow*, 2019 WL 1313470, at *6-7. Excessiveness can take many forms, including billing too

many hours for using tailored forms or copying work product from prior cases or because the

experience of the attorney justifies less time expenditure than billed. *Id*. at *6. Duplication and

redundancy results from overstaffing a case; thus, making time, "even though actually expended .

. . not reasonable" and excludable "from an award of attorney's fees." *Id*. at *7. Additionally,

unsupported or vague time entries may result in a reduction in time claimed. *See id*. And hours

expended on clerical work are not compensable in an award for attorney fees. *Id*. Further, a reduction is warranted when tasks "could have been delegated to a non-professional and billed at a lesser

rate." *West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *5 (W.D. Tex. Dec.

3, 2019) (recommendation of Mag. J.) *accepted by* 2019 WL 12393458 (W.D. Tex. Dec. 27, 2019).

This reasoning likewise applies when a task could have been delegated to an associate attorney rather than being handled by a partner. In addition, it is within the broad discretion of the Court to reduce requested fees for travel time whether or not the attorney actually works during such time. *See Caplin & Drysdale Chartered v. Babcock & Wilcox Co. (In re Babcock & Wilcox Co.)*, 526 F.3d 824, 828 (5th Cir. 2008).

Plaintiffs argue that their billing was not excessive or duplicative and was properly charged at the appropriate rate. ECF No. 182 at 8-12. As for hours claimed for discussing potential plaintiffs, Plaintiffs argue that the discussions are relevant to identifying plaintiffs and managing the collective action. *See id.* at 8. But unless a potential plaintiff joins the case, the Court sees no valid basis for billing for the discussion. "Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority." *Hensley*, 461 U.S. at 434 (citation and internal quotation marks omitted). Plaintiffs do not argue that any potential plaintiff or opt-in joined the case. Accordingly, the Court finds that Plaintiffs have not carried their burden to show these hours were reasonably expended.

As for alleged hours billed for legal research, Plaintiffs argue that Defendant identifies no prior cases for which the research should have been conducted, and even if such other cases exist, they do not preclude conducting independent research in this case. ECF No. 182 at 8-9. The Court agrees that a general objection that counsel for plaintiffs should have had research available from a prior case is insufficient to raise a sincere question of the reasonableness of the research time for this case. Defendant's objection might be more forceful if it had identified a specific case that was similar to this one. But even then, many factors affect the reasonableness of legal research. On the record before it, the Court will not discount time claimed based on this objection by Defendant.

With respect to arguments that Plaintiffs expended excessive time on discovery responses, Plaintiffs point out that they claimed less than an hour a plaintiff on discovery related matters. *Id.*

at 9. The Court finds no excessive time expenditure on these claimed hours.

Plaintiffs counter the argument about duplicative billing by arguing that Defendant cites no caselaw to suggest that multiple attorneys appearing at hearings and depositions is inappropriate. *Id*. at 10. But that counterargument does not help Plaintiffs carry their burden to show the reasonableness of time claimed. Courts should exclude "hours that were not reasonably expended, and this includes "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434 (citation and internal quotation marks omitted). The Fifth Circuit has recognized that, when considering the reasonableness of expended time,

> the trial judge should weigh the hours claimed against [the judge's] own knowledge, experience, and expertise of the time required to complete similar activities. If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted.

*Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 535 (5th Cir. 1986) (quoting *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)). The Court finds a reduction warranted for duplicative billing.

Plaintiffs likewise argue that "Defendant cites no authority for the proposition that certain tasks should be performed by [an associate] rather than [a partner]" or that "certain legal work must be performed by a paralegal rather than an attorney." ECF No. 182 at 10-11. These matters likewise seem to fall within the trial judge's own knowledge, experience, and expertise as to whether a given task is appropriate for a partner's rate, an associate's rate, a paralegal rate, or not at all. Notably, "[f]ees can only be recovered for paralegal services to the degree that the paralegal performs work traditionally done by an attorney." *Meadows v. Latshaw Drilling Co., LLC*, No. 3:15-CV-1173-N, 2020 WL 291582, at *4 (N.D. Tex. Jan. 21, 2020) (quoting *Saavedra v. Richards*, Civ. A. H-10-0856, 2012 WL 13128570, at *4 (S.D. Tex. Mar. 22, 2012)). "For paralegal fees the court should ask if the 'work was sufficiently complex to justify the efforts of a paralegal,

as opposed to an employee at the next rung lower on the pay-scale ladder.'" *Saavedra*, 2012 WL 13128570, at \*4 (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999)). For similar reasons, the Court sees a legitimate basis for differentiating between tasks appropriate for a partner's rate versus the rate of a less experienced attorney. Such differentiation is built into the structure of law firms.

Defendant provides Exhibit 6 (ECF No. 179-7) to identify more than three pages of entries billed by counsel that Defendant argues should be billed as a paralegal rate. As characterized by Defendant, these entries include "communications with process servers and court reporters, preparing Consent to Join forms, reviewing signed Consents to Join, drafting Notice of Appearance, and creating spreadsheets." ECF No. 179 at 16. The Court's review of Exhibit 6 supports that characterization. Many of these entries reflect hours billed for clerical, rather than attorney or paralegal time. *See Meadows*, 2020 WL 291582, at \*4 ("Clerical duties consist of, among other things, reviewing court notices, scheduling, notifying clients and counsel of deadlines, preparing filings, maintaining files, copying, printing, labeling, and emailing documents, and communicating with court staff."). Tasks such as "responding to requests . . .  for information, gathering information, interviewing class members, investigating complaints, and developing a coherent picture . . . are clerical duties that could have been handled by non-lawyers." *Walker v. U.S. Dep't of Hous. & Urb. Dev.*, 99 F.3d 761, 771 (5th Cir. 1996) (internal quotation marks omitted). While "plaintiffs are entitled to use their lawyers to do such work, '[s]uch non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.'" *Id.* (quoting *Johnson*, 488 F.2d at 717).

Plaintiffs argue that "[i]t is legal work to review and identify relevant facts from a deposition transcript, as is the creation of a spreadsheet intended to categorize these facts for use in responding to various motions." ECF No. 182 at 11. The latter argument misses the point—paralegal

time is recoverable only to the extent the work is traditionally done by attorneys. Attorneys certainly review deposition transcripts to identify relevant facts for inclusion in motions and briefing. The Court will not reduce attorney time simply for performing such task. However, creating a spreadsheet from such facts seems more in line for a paralegal rate. Likewise, receiving and reviewing consents to join are suitable for a paralegal rate to the extent such tasks exceed clerical work. The Court finds some reduction for these matters warranted.

Defendant also provides Exhibit 7 (ECF No. 179-8) to identify several entries of time expended by Sanford that should be billed as associate work. All of these listed matters involved either a conference or other communication with chambers. Quite frankly, unless the conference was with a judge, rather than court staff, all of these communications, including the conference, are more appropriately considered to be clerical, rather than paralegal, duties. *See Meadows*, 2020 WL 291582, at *4 (listing "communicating with court staff" as a clerical duty).

Plaintiff argues that it is "unreasonable to argue that every email with the court reporter is paralegal work." ECF No. 182 at 12. The Court disagrees. Not only is such email time non-attorney time, but it is not compensable at all, as it is clerical work.

As for specifically alleged clerical work, "Plaintiffs do not intend to quibble over the 4.6 hours totaling $1,415.00 identified by Defendant and therefore agree to a reduction to Plaintiffs' fee request in this amount." *Id*. "It is well-settled that clerical or secretarial costs are part of an attorney's office overhead and are reflected in his billing rate." *Meadows*, 2020 WL 291582, at *4 (quoting *Stevenson v. Lasalle Corr. Transp., LLC*, No. 3:13-CV-2105-N, 2015 WL 11120525, at *3 (N.D. Tex. Apr. 21, 2015)). Clerical time is not compensable as reasonable hours expended on litigation. With Plaintiffs concession as to clerical work, the Court finds a reduction warranted.

With respect to travel time, Plaintiffs agree to a 50% reduction "and accepts Defendant's Exhibit 9 (ECF No. 179-10) as an accounting of travel time billed." ECF No. 182 at 12. When the

billing records do not clearly state "whether any work was done while in transit, though it was [P]laintiffs' burden to demonstrate as much," courts may reduce hours "to account for hours billed for travel time." *Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2016 WL 7178967, at *13 (N.D. Tex. Dec. 8, 2016) (attributing first quote to *Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 627 (S.D. Tex. 2015)). Nevertheless, given the voluminous nature of the fee dispute here, the Court need not determine the precise amount of travel time that should be reduced. The concession by Plaintiffs warrants a significant reduction on its own.

### 3. **Plaintiffs' Success Revisited**

In this case, Plaintiffs achieved only partial success in avoiding summary judgment. Although their underlying claim has always been the failure of Defendant to pay overtime, they refocused that claim in the second amended complaint to a claim for drivetime and standby time, in addition to a regular rate claim, which was limited to the commute time for both drivers and riders after the first partial grant of summary judgment. After the Court partially granted Defendant summary judgment following Defendant's efforts to decertify the collective action, Plaintiffs were proceeding to trial on their standby claim, a compensability claim for morning and evening drivers, and a regular rate claim for riders and drivers (as an alternative basis to compensability). While these claims survived summary judgment, Plaintiffs' compensability claim failed for any activity other than the morning and evening driving.

The impact of summary judgment on Plaintiffs' claims is seen when one compares the damages Plaintiffs claimed before and after summary judgment. Although Defendant presents this comparison for purposes of a post-lodestar percentage reduction for degree of success, *see* ECF No. 183 at 9, the Court finds it pertinent to the lodestar calculation itself.

In their first amended complaint, Plaintiffs claimed damages "of at least $29,750.00 [per plaintiff] prior to liquidation." *See* ECF No. 24 ¶ 30. The second amended complaint filed in

December 2018 omitted the actual damage figures but utilizes the same damage computation as the first amended complaint. *Compare id. with* ECF No. 55 ¶ 39. In their reply brief, Plaintiffs state that they provided a settlement demand dated July 1, 2020, in which they would settle this consolidated action for $175,998 with an equal amount in liquidated damages and attorney fees of $150,000. ECF No. 182 at 16-17 (citing to an Ex. 1 that is not attached to the reply). Defendant does not dispute this settlement demand. ECF No. 183 at 10.

After summary judgment Plaintiffs claimed $43,393 in pre-liquidation damages for time spent driving and $61,649 for pre-liquidation damages for the rate of pay claims. *See* ECF No. 179-1 ¶ 8. As to the standby claim, Plaintiffs never quantified the damages, and just prior to the successful mediation, they only disclosed the above-mentioned damage amounts. ECF No. 183 at 6. By not attributing damages to the standby claims, it is reasonable to ignore any success on that claim.

To avoid a need for trial, Defendant agreed to settle for a total amount of $105,042, resulting in an average distribution of $1,780.37 per plaintiff prior to tax withholdings. ECF No. 179-1 ¶ 9. According to Defendant, "the settlement agreement did not contain an admission of liability by Fuelco or liquidated damages under 29 U.S.C. § 260 of the FLSA." ECF No. 183 at 6. As seen by the settlement amount compared to the amount claimed in the first amended complaint, the effects of summary judgment appear pronounced. Even the amount claimed in July 2020 as compared to the settlement ultimately achieved shows a wide gap between amount claimed and amount obtained.

It is Plaintiffs burden to show the reasonableness of its billed hours. Defendant has presented several reasons to discount the hours claimed. Plaintiffs have capitulated as to some hours, but also advance solid reasons for finding other hours reasonable. Defendant would have the Court deny all hours before Plaintiffs filed their second amended complaint. The Court, however, does

not agree that such reduction is warranted. The parties strongly disagree as to reducing hours billed due to unsuccessful claims. Because Plaintiffs' claims are interrelated and simply subsets of a broader claim, it is difficult to parse out particular hours expended on claims that failed. Still, despite their protestations to the contrary, Plaintiffs failed to advance a significant part of their compensability claim to trial. They also sought no damages for their standby claim during mediation. The Court finds that a reduction for partial success warranted under the facts of this case.

### 4. Reasonable Hours Conclusion

Having considered the various requested hours, the objections thereto, and the applicable law as set forth herein, the Court finds that under the circumstances of this case and cases with similar voluminous fee disputes, a significant across-the-board reduction is in order. When a defendant "meticulously catalogue[s] Plaintiffs' billing issues and present[s] them to the Court in their briefing," the Court may find "an across-the-board reduction is appropriate." *Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2016 WL 7178967, at *15 (N.D. Tex. Dec. 8, 2016). The Northern District of Texas reduced "the hours billed by Plaintiffs' counsel by an additional 35%" after the plaintiffs had made their own billing judgment reductions. *See id*.

In cases involving the same firm as representing Plaintiffs here, the Western District of Texas has reduced the number of hours claimed by 37.5%, *see Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1156-DAE, 2019 WL 1313470, at *8 (W.D. Tex. Jan. 3, 2019) (recommendation of Mag. J.) *adopted by* 2019 WL 1313454 (W.D. Tex. Jan. 29, 2019), and by 30%, *see West v. Zedric's LLC*, No. SA-19-CV-00556-FB, 2019 WL 6522828, at *6 (W.D. Tex. Dec. 3, 2019) (recommendation of Mag. J.) *accepted by* 2019 WL 12393458 (W.D. Tex. Dec. 27, 2019). Like this case, the parties in *Furlow* had settled as to damages ($25,500) but could not agree as the amount of fees. *See* 2019 WL 1313470, at *1. Plaintiffs requested "$91,780.50 in attorney's fees, and $3,710.16 in costs." *Id*. The Defendant in *West* made "an offer of judgment in the sum of

$3,500.00, plus an award of reasonable attorney's fees and costs pursuant to the FLSA as determined by the Court," which the Plaintiff accepted. *See* 2019 WL 6522828, at *1. After the parties could not "reach an agreement on attorney's fees and costs," Plaintiff moved for fees and costs in the amount of "$9,495.00 in attorney's fees and $571.03 in costs." *Id.*

Obviously, this case is much more complicated and involved than either *West* or *Furlow*. Still, those cases involved many of the same deficiencies in counsels' billing as present here. Despite the passage of time, the attorneys continue to bill deficiently. In any event, as in those cases, the Court finds numerous reasons for reducing claimed time, including the fact that Plaintiffs were not fully successful on their claims. Although the interrelationships of the claims preclude specific reductions based on being unsuccessful on a given claim or aspect of a claim, billed time undoubtedly includes time expended on matters on which Plaintiffs did not succeed. In light of all the reasons for reduction, the Court finds an across-the-board reduction of 40% warranted for this case. Consequently, the Court reduces claimed hours as follows: Sanford (257.6 to 154.56); McEntire (14.3 to 8.58); Short (366.4 to 219.84); Kinney (396.7 to 238.02); Law Clerk (20.6 to 12.36); and Paralegal (54 to 32.4).

## C. Lodestar Calculation

Having determined a reasonable rate for each attorney and the reasonable hours expended on this litigation, the Court can now make its lodestar calculation by multiplying the hours by the determined rates. For all hours reasonably expended, the Court calculates total fees (attorneys, law clerks, and paralegals) to be $189,978.30.

## D. *Johnson* Factors

The next step is to consider whether to make any reduction or enhancement to the lodestar based upon the *Johnson* factors. As Plaintiffs recognize, "the *Johnson* factors are typically reflected in the lodestar and are rarely used to justify a deviation from the lodestar amount." ECF

No. 176 at 17. While Plaintiffs assert that "the contingent nature of the fee in this case . . . supports the hourly rates requested," they recognize that "the contingent nature of the fee does not justify enhancement of the lodestar *after* it has been calculated." *Id.* (parenthetically quoting *Fox v. Pittsburg State Univ.*, 258 F. Supp. 3d 1243, 1270 (D. Kan. 2017) for second quotation). They submit that, "to the extent that any of the *Johnson* factors support a deviation, that deviation is upward." *Id.* at 19. Defendant, on the other hand, argues that a downward deviation is warranted to reflect that the fees due under the lodestar calculation are disproportionate to Plaintiffs' monetary success. ECF No. 179 at 18-21. It seeks to reduce Plaintiffs' fee recovery by another 67%. *Id.* at 21.

As noted by the Supreme Court, "payment for the time and effort involved—the lodestar—is presumed to be the reasonable fee authorized by the statute, and enhancement for the risk of nonpayment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the record and specific findings by the courts." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987) (citing *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)); *accord Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-59 (2010). "*Perdue* simply emphasizes what the Court has long recognized: enhancements are permissible only in a rare and exceptional class of cases." *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 394 (5th Cir. 2016). But when courts consider "whether to decrease the lodestar," they "must consider the plaintiff's degree of success." *Id.* at 395.

Courts may not adjust the lodestar calculation "due to a *Johnson* factor, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting." *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) (per curiam). The Supreme Court has held "that the 'novelty [and] complexity of the issues,' 'the special skill and experience of counsel,' the 'quality of representation,' and the 'results obtained' from the litigation are presumably fully reflected in the lodestar amount, and thus cannot serve as

independent bases for increasing the basic fee award." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum*, 465 U.S. at 898-900), *supplemented*, 483 U.S. 711 (1987). The Supreme Court has also specifically held "that enhancement for contingency is not permitted." *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

The Supreme Court has recognized that the "results obtained" in the litigation is an "important factor" as to whether to adjust a fee. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id*. In fact, this is "the most critical factor." *Id*. at 436. *Hensley* sets out two inquiries. *See id*. at 434. Because this case only involves related successful and unsuccessful claims, the Court need only consider the second inquiry: "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *See id*. This inquiry inherently recognizes that the results obtained may be satisfactorily subsumed into the lodestar calculation.

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id*. at 435-36 (citation and footnote omitted).

Although a court abuses its discretion when it "fail[s] to give adequate consideration to the result obtained relative to the fee award, and the result obtained relative to the relief sought," *Migis*

*v. Pearle Vision, Inc.*, 135 F.3d 1041, 1048 (5th Cir. 1998), courts may give adequate consideration of such matters in the lodestar calculation itself, *see Saizan*, 448 F.3d at 802-03 (affirming reduction of lodestar amount without revisiting the *Johnson* factors except to reject the plaintiffs' request for upward departure). The Court has adequately considered these factors in the lodestar calculation. To make another reduction here would be impermissible double counting.

The lodestar for this case is just shy of $190,000. The parties settled for approximately $105,000. "Given the nature of claims under the F.L.S.A., it is not uncommon that attorney fee requests can exceed the amount of judgment in the case by many multiples." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 342 (5th Cir. 2007) (per curiam) (affirming award of fees if $129,805.50 for a damages award of $23,357.30). The Court does not find the ratio between the lodestar fee and the amount of damages recovered sufficient to justify further reduction.

The gap between the damages recovered and the amount initially claimed is more pronounced. However, Plaintiffs backed off the initial demand after their second amended complaint. Their demand, without attorney's fees, was still about $350,000—more than three times the settlement amount after summary judgment. This may still exhibit limited success. *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 829-30 (5th Cir. 2003) (noting that seeking "$5 million in damages," while collecting "only $180,000" shows limited success). But, in the FLSA context, the Fifth Circuit has "made clear that 'while a low damages award is one factor which a district court may consider in setting the amount of attorney's fees, this factor alone should not lead the district court to reduce a fee award.'" *Id.* (quoting *Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392 (5th Cir. 2000)); *accord Combs v. City of Huntington, Tex.*, 829 F.3d 388, 395 n.3 (5th Cir. 2016) (recognizing differences between FLSA and civil rights cases).

In this case, Plaintiffs do not support any increase in the lodestar calculation. They argue

that their recovery vindicated the congressionally identified rights and policies of the FLSA, and that enforcing the FLSA provides employers an incentive to obey the applicable statutory provisions. ECF No. 182 at 14. With respect to the degree of Plaintiffs' success, vindication is less "weighty of a factor [than] monetary success." *Saizan*, 448 F.3d at 801. While less weighty, it is a factor, nonetheless.

Further, the Supreme Court clearly permits recovery of fees even if the plaintiffs "are not victorious on every claim." *Fox v. Vice*, 563 U.S. 826, 834 (2011).

> [I]n the real world, litigation is [often] complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail. Some charges are frivolous; others (even if not ultimately successful) have a reasonable basis. In short, litigation is messy, and courts must deal with this untidiness in awarding fees.

*Id*. at 833-34. Although courts" must take the degree of success obtained into account," they abuse their discretion if they reduce fees "solely on the basis of the amount of damages obtained." *Black v. SettlePou, P.C.*, 732 F.3d 492, 503 (5th Cir. 2013). The dual principles of (1) the degree of success being the most critical factor in determining fees and (2) not reducing fees solely on the amount of damages obtained live in harmony rather than in conflict. *See Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262-63 (5th Cir. 2018) (Ho, J., concurring). One reconciles them as follows:

> Attorney time must be spent in service of the best interests of the client. So where attorney time exceeds client value to a significant degree, courts should be suspicious. The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees. If the former, the time may be awarded, even though it ultimately proved fruitless. If the latter, the churned time should be denied.

*Id*.

Here, Defendant zealously defended this action at every turn, thus requiring much time and labor by counsel, a factor clearly accounted for in the Court's determination of reasonable hours expended. The fee was contingent upon success and Plaintiffs' counsel have not been paid even

though they filed this case in 2017. But the Court has compensated counsel for the delay by adjusting the fee rates.

Defendant now seeks to significantly reduce the lodestar for the limited recovery of Plaintiffs in comparison to prior damage demands. But, in the FLSA context, the Court cannot reduce the presumptively sufficient lodestar solely on the basis of results obtained. The Court notes, furthermore, that, while evidence of "settlement negotiations *may* be relevant in measuring success," such factor is "clearly only one factor to be considered in the award of fees," and the Court "is also free to reject such evidence as not bearing on success when, for instance, negotiations occur at an early stage before discovery, or are otherwise not a fair measure of what a party is truly seeking in damages." *Lohman v. Duryea Borough*, 574 F.3d 163, 169 (3d Cir. 2009). Even though Defendant does not rely solely on evidence from settlement negotiations, the Court finds that it has discretion to reject early damage demands that were later lowered as the case progressed. Furthermore, in noting the potential relevance of evidence of settlement negotiations, the Court is making no determination as to whether considering evidence of settlement negotiations violates Fed. R. Evid. 408, a matter that the Fifth Circuit has not yet addressed. *See Aguayo v. Bassam Odeh, Inc.*, No. 3:13-CV-2951-B, 2016 WL 7178967, at *19 (N.D. Tex. Dec. 8, 2016). Neither party has raised a Rule 408 issue, and like *Aguayo*, "the Court need not delve into deep analysis on the matter because a reduction is not in order." *See id.*

Viewing the *Johnson* factors holistically, the Court finds no reason to depart from the lodestar either up or down. The *Johnson* factors are either subsumed into the lodestar calculation or they counterbalance any possible upward or downward departure. To the extent Plaintiffs' counsel billed for hours not compensable or excessive or duplicative or through other means to churn time, the Court has fully considered such matters in calculating the lodestar amount.

One last matter deserves comment. Defendant suggests an award of a mere $36,550.46, *see*

ECF No. 179 at 21, as a 33% contingency fee for the $105,000 settlement recovery. Even had Plaintiffs and their attorneys entered into a contingent-fee contract for fees, which they did not, such contract "does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be inconsistent with the statute and its policy and purpose." *Blanchard v. Bergeron*, 489 U.S. 87, 93 (1989) (addressing fees under 42 U.S.C. § 1988). The statutory provision for an "reasonable attorney's fee," "contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less." *Id*. Defendant's attempt to limit reasonable fees based upon a non-existent contingent fee contract is not well taken.

After considering each of the *Johnson* factors, whether stated herein or not, the Court concludes that no further reduction or any enhancement of the lodestar amount is warranted.

### III. COSTS OTHER THAN ATTORNEYS' FEES

Plaintiffs seek costs of $21,846.60 in this consolidated action. *See* ECF No. 176 at 20. Defendant asserts objections to recovering travel and deposition expenses related to claims abandoned in the second amended complaint and for claims dismissed on summary judgment. *See* ECF No. 179 at 18. It contends that Plaintiffs were 90% unsuccessful on their commute and standby times and urges the Court to reduce those expenses by that same percentage. *Id*. It objects to costs exceeding $7,617.26. *See* ECF No. 179-19. It attributes $1,931.63 in costs to matters related to abandoned claims. *See* id. It reduces other expenses ($13,136.34) by 90% to reflect the lack of success that it contends Plaintiffs had on summary judgment. *See id*.

Plaintiffs argue that Defendant's objections are improperly based on its arguments as to the degree of success and amount of deposition time devoted to successful versus unsuccessful claims. ECF No. 182 at 12-13. As the Court previously found, Plaintiffs did not abandon any claims per se as they amended their complaints. With no other objection to the $1,931.63, the Court

finds those expenses recoverable. Although the 90% reduction for lack of success is likewise not warranted, some across-the-board reduction is appropriate given Defendant's success on summary judgment. The Court previously reduced fees by 40%. Although not an exact parallel, the Court finds that percentage appropriate for reducing the $13,136.34 in expenses. Such percentage reduction results in a reduction of $5,254.54. With that reduction, Plaintiffs are entitled to costs of $16,592.06.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** *Plaintiffs' Motion for Attorneys' Fees and Costs* (ECF No. 176). As agreed by the parties, an award of fees and costs is warranted in this case. But the motion is denied as to the claimed amount of fees and costs. In accordance with the law as stated herein, the Court has calculated the lodestar amount and declines to depart upwardly or downwardly from that presumptively sufficient amount of fees. The Court has also reduced costs as set forth herein. Plaintiffs are entitled to $189,978.30 as reasonable attorneys' fees for the hours reasonably expended in this litigation and $16,592.06 in costs.

**IT is so ORDERED.**

**SIGNED this 18th day of March 2024.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**